Argued and submitted December 2, 1980,
reversed April 7, 1981

STATE ex rel HEALY,
*Respondent,*
*v.*
SMITHER,
*Respondent,*
*v.*
LEWELLING,
*Petitioner,*
THE AMERICAN INSURANCE COMPANY,
*Petitioner.*

(No. 81901, CA 14978, SC 27160, 26165)

626 P2d 356

James N. Westwood, Portland, argued the cause for petitioner Asa L. Lewelling. With him on the petition were Clifford N. Carlsen, Jr., Portland, and Miller, Nash, Yerke, Wiener & Hager, Portland. On the brief were Clifford N. Carlsen and Bruce A. Rubin, Portland.

John R. Barker, Portland, argued the cause for petitioner The American Insurance Company. With him on the petition and briefs was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

No appearance by respondent State of Oregon, respondent Smither, or defendant United States National Bank.

Before Denecke, Chief Justice, and Lent, Linde, and Peterson, Justices.

PETERSON, J.

## PETERSON, J.

In this receivership proceeding, the assets of the receivership are inadequate to pay the creditors in full, and one creditor claims priority over another creditor of the same class. The trial court ruled in favor of the creditor asserting a priority (Lewelling). The other creditor, American Insurance Company (American), appealed and the Court of Appeals reversed, holding that the parties "are entitled to share equally in the assets now held by the Corporation Commission." 46 Or App at 633.[1] We reverse.

### THE FACTS

First California Company (First California) was engaged in the securities business in Oregon. Defendant Smither was vice president of First California, a member of the Board of Directors, and was Chief Operating Officer from March, 1973, to September, 1973. One Coen was the president and principal owner of First California, and was a member of the Board of Directors.

Lewelling was a customer of First California and lost substantial sums of money because of the fraud of Coen and violations of the securities laws by Smither. Lewelling sued First California, Coen and Smither and obtained a judgment against Coen and First California on the fraud causes of action, and against Smither and First California on the securities violations. *Lewelling v. First California Company, Coen and Smither,* (US DC Or) Civ No. 74277 (1979). The fraud judgments were paid in full.

The Oregon Corporation Commissioner, pursuant to ORS 59.255(1), filed a petition for the appointment of a receiver of Smither's assets. A receiver was appointed, and both American and Lewelling filed claims in the receivership proceeding.

American's claim herein arises from the fact that it issued a Stockbroker's Blanket Bond to First California.

---

[1] American also sought review in this court, claiming that the Court of Appeals erred in holding that the claimants should share the assets equally, rather than ratably. See 3 Clark, Receivers 1213-1219, § 667.4 (3d ed 1959). It is not necessary for us to reach this question, for we hold that the Lewelling claim is entitled to priority.

The bond indemnified First California against any loss it might incur due to the dishonesty or fraudulent acts of its employees. It specifically excluded losses arising from any other violation of the securities laws. American paid its bond limits to First California and, being subrogated to the rights of First California, thereafter obtained a judgment against Smither. In this proceeding, American seeks to recover the amounts paid to First California pursuant to its obligations under the bond.

### THE COURT OF APPEALS ANALYSIS

The Court of Appeals held that American and Lewelling were creditors "in the same class" and made the following analysis:

1. " 'With general creditors of the debtor whose claims are to be paid out of the general funds of the estate, as with the members of every other class of receivership claimants, the general rule is that "equality is equity" * * *.' " 46 Or App at 632, quoting from *Lewis & Dalin v. Clarke Lbr. Co., et al,* 185 Or 522, 525, 204 P2d 130 (1949).

2. " '* * * To warrant the enforcement in a receivership of one claim over another of the same class, there must be something in the intrinsic nature of such a claim conferring an equity superior to that of the latter claim.' * * *" *Id.*

3. "For the purpose of this claim, American stands in the place of First California, its insured. As such, it is entitled to all the rights and remedies First California has against Smither. * * *." 46 Or App at 632.

4. "* * * American and Lewelling, as claimants, are in the same class; both possessed judgments against Smither. * * *." *Id.*

5. No significant factor distinguishes the Lewelling claim; therefore, he is not entitled to priority. 46 Or App at 633.

We agree with the Court of Appeals as to the applicable law set forth in parts 1, 2, and 3 of their analysis; and we agree with the conclusion that Lewelling and American, as judgment creditors, are in the same class. We believe, however, that a significant factor exists which compels the conclusion that Lewelling's claim is entitled to priority: Lewelling's judgment is against Smither *and* First California.

## DISCUSSION

In denying recovery, the Court of Appeals stated:

"Lewelling was a direct victim of certain of Smither's unlawful actions. American, on the other hand, was an insurer which suffered loss because of other unlawful action by Smith [sic]. While it may be that a court, under appropriate circumstances and in the exercise of its equitable powers, can establish priorities not mandated by the law, *see In Matter of Stirling Homex Corp.,* 591 F2d 148 (2d Cir 1978), we hold that this is not such a case. No significant factor distinguishes the claims of the parties here. No equitable consideration weighs in favor of Lewelling over American. * * *." 46 Or App at 633.

As stated above, we believe that a significant factor exists which requires that Lewelling's claim receive priority. Before discussing the factor which leads us to grant Lewelling priority, we take note of certain facts and rules of law.

American issued a Stockbroker's Blanket Bond to First California in which it agreed to indemnify First California for "loss through any dishonest or fraudulent act of any of the Employees" of First California. Although there is no subrogation clause in the American policy, an insurer's common law right of subrogation has long been recognized,[2] and we assume that American stands in the same position it would if there were an express subrogation clause in its policy. We recognized the fairness of the subrogation doctrine in *United Pac. Ins. Co. v. Schetky Equip. Co.,* 217 Or 422, 434, 342 P2d 766 (1959):

---

[2] Undoubtedly, the first recognition of a subrogation right was at common law. In *American Central Ins. Co. v. Weller,* 106 Or 494, 502, 212 P 803 (1923), the subrogation doctrine was discussed as follows:

"The doctrine of subrogation has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one should be enriched by another's loss and may be invoked wherever justice demands its application, in opposition to the technical rules of law. The right of subrogation depends upon the facts and circumstances of each particular case, to which must be applied the principles of justice * * *."

"* * * 'This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries.' * * *.

"Subrogation 'is a remedy which is highly favored. The courts are inclined to expand rather than to restrict the principle. Although formerly the right was limited to transactions between principals and sureties, it is now broad and expansive, and has a very liberal application * * * the principle being modified to meet the circumstances of the individual case.' * * *."

■   However, the insurer's right of subrogation is not without its limitations. It is often said that the subrogee (American) "stands in the shoes" of the subrogor (First California). As such, the subrogee's rights rise no higher than the rights of the subrogor, and the person against whom claim is made may assert, as a defense to the subrogation claim, any defenses available against the subrogor. *U. S. Fire Ins. Co. v. Chrysler Motors,* 264 Or 362, 365, 505 P2d 1137 (1973); 16 Couch, Insurance § 61.220 (2d ed 1966). As noted by the Court of Appeals, both American and Lewelling were judgment creditors of Smither. But Lewelling's judgment was against Smither *and* First California. American's judgment was against Smither only.

Considering the foregoing facts and rules of law, these conclusions follow:

1.   First California is jointly and severally liable to Lewelling on Lewelling's claim against Smither.

2.   Were First California to recover against Smither, Lewelling by virtue of his judgment against First California, could compel (by execution, garnishment, or otherwise) First California to pay such sums to him, up to the amount of his unsatisfied judgment against First California.

3.   The claim asserted by American against Smither is in reality the claim of First California against Smither, and we should (and do) consider this case as involving a dispute between First California and Lewelling.

4.  The resolution of the dispute in this case requires us to compare the equities of the Lewelling claim with the equities of the First California claim, as if American were not a party to this case.[3] The discussion which follows makes such a comparison, as if American were not in the case, the dispute being between Lewelling and First California.[4]

The Court of Appeals' conclusion that Lewelling and American [First California] are creditors "in the same class," is literally correct (in the sense that both are judgment creditors), but only literally correct, because in truth, the proceeds of any collection First California might make herein would be available to satisfy Lewelling's claim against it.

■■  The general rule is that creditors of the same class *normally* share the receivership assets ratably. The general rule is, however, subject to the well settled exception that if within the class "* * * there * * * [is] something in the intrinsic nature of * * * a claim [which confers] an equity superior to that of [other claimants within the class],'" a preference may be granted. *Lewis & Dalin v. Clarke Lbr. Co., et al., supra,* 185 Or at 525. The "superior equity" exception is, at best, a slippery one and difficult to apply in many cases. Here, however, we have no difficulty in concluding that the Lewelling claim is superior to the First California claim.

Both creditors have judgments against the debtor, but the judgment of the creditor claiming priority is also against the other creditor who contests the priority. Were the Lewelling priority claim to be denied, he could garnish the receiver to recover the unsatisfied amount of his judgment against First California.[5]

---

[3] As will be seen below, the comparison of the "equities" in this case does not involve a consideration of the genesis of the claim which underlies the judgments of Lewelling and First California.

[4] "* * * One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made. * * *" *United States v. Munsey Trust Co.,* 332 US 234, 242, 67 S Ct 1599, 91 L Ed 2022 (1947).

[5] Indeed, he might garnish the receiver before the determination of his claim of priority.

The straightforward, direct approach to the priority question in this case is to hold that, within the class, as against First California, the Lewelling claim deserves priority up to the amount of his judgment against the only other creditor of the same class, First California.[6] We reach this conclusion solely by reason of the fact that Lewelling is the judgment creditor of First California, in whose shoes American must necessarily stand.[7]

It is inescapable that First California is liable to Lewelling on his judgment against First California, and ultimately Lewelling could compel First California to apply the funds received from the receiver to his judgment against First California. We see no reason, on the facts before us,[8] why recognition should not be given to the fact that Lewelling has a judgment against First California and Smither, and to apply the amounts that First California would receive from the receiver to the payment of the

---

[6] The issue would be slightly more complex if the claims of more than two creditors were involved. For example, if there were three creditors, *A, B,* and *C,* each in the same class and each having claims in the same amount, but *B* had a judgment against *A* for twice the amount of *B's* claim, as between the three of them, upon distribution, *B* would be entitled to priority over *A* but not over *C.* The end result would be that *B* would receive *A's* share, and *C* would receive his ratable share, irrespective of the priority claim of *B* over *A.*

[7] A claim might also be made that Lewelling's equities are superior because American's claim arises from the very risk it insured against (dishonesty of a First California employee), for which it received a premium. This may prove too much, however, for its premium structure may have been based upon the recovery it makes in subrogation cases such as this. *See* Horn, Subrogation 25 (1964). In any event, this does not enter our decision.

Another aspect of this case which deserves passing mention is whether Lewelling's claim has a superior equity because Smither was, in a substantial way, First California. As vice president and chief operating officer, his acts become those of First California. But no more than that of any employee acting within the scope of employment. Here, too, however, we do not consider this aspect of the case in our analysis or in reaching the conclusion that Lewelling's claim is entitled to priority. *Compare American Surety Co. v. Bank of California,* 133 F2d 160, 162-163 (9th Cir 1943).

It is not necessary, in this case, to compare the equities of the underlying claims upon which the judgments are based. *Compare* 3 Clark, Receivers 1198, § 667 (1959).

[8] If other creditors of Smither *and* First California were involved, their claims would have to be considered with Lewelling's. Although such creditors may have priority over American, the priorities as between such creditors and Lewelling is not before us.

Lewelling claim, up to the amount of his unpaid judgment against First California. As American stands in First California's shoes, it follows that Lewelling's claim is entitled to priority.

One further aspect of this case merits discussion. The statement that a subrogee's rights rise no higher than the rights of the subrogor normally is made in situations in which the subrogee is making claim against a third person against whom the subrogor has a claim or cause of action. In such situations, the subrogated claim generally is subject to any defenses the person against whom the claim is made has against the subrogor. In this context, American would be subject to any defenses that Smither would have against First California. Our holding puts the subrogee in the shoes of the subrogor (First California) not only as to the person against whom the subrogor has a right of action (Smither), but as to other persons having claims against the subrogor.

The case reports are virtually devoid of precedents on this issue, and the commentators are singularly silent. Nearly a century ago, however, one writer stated:

> "A surety, or one standing in that situation, paying the debt of his principal, is entitled to subrogation to all the rights and remedies of the creditor, as to any fund, lien or equity which the creditor may have against any other person or property on account of the debt. The rule is that the equity of the surety extends to all the rights of the creditor respecting the debt which the surety has paid. Yet there is a limit to the rule as to the rights of the surety and to his equities, though he has paid the debt for which another was primarily liable. When the doctrine is invoked for his benefit, he can claim no greater rights than the one for which he is subrogated. The right is the creature of equity, and should never be allowed in any case where its exercise will work injustice to others. And again, the party who applies to be subrogated, as against the claims of another, should, in all cases be required to show that he has a better right, or greater equity than the party who may oppose it. And some authorities have held that his rights will not defeat the interest of third persons, when their interest, though subordinate to that of the creditor, is yet prior in date to the suretyship." (Footnotes omitted.) Harris, Subrogation § 173 (1889).

*Wieland v. Westcott,* 64 SD 552, 268 NW 904 (1936), though not in point factually, offers an analogy. There an insurer executed a surety bond which a South Dakota statute required to be filed before a broker could be licensed. The bond was conditioned upon the broker's "strict compliance with the provisions of the [securities laws]." In due course, a receiver was appointed to take charge of and liquidate the assets of the then insolvent broker. Ultimately, the insurer paid its $5,000 limits to the receiver and filed a claim with the receiver, asserting that it was entitled to reimbursement pro rata with other creditors, whose claims aggregated $90,000. The South Dakota court rejected the claim, saying:

"* * * The appellant does not claim that the right to recover arises from subrogation, but asserts a claim in its own right upon the contract of indemnity which it entered into with the principal; that it created the relationship of debtor and creditor when the bond was executed and delivered; that payment by the surety merely fixed the amount of damages for which the principal is liable and related back to the time that the contract was entered into; and such being the relation of the parties, the surety company has the right to file a claim and to be paid dividends in common with other general creditors.

"The general rule is that a surety may not claim subrogation against an insolvent debtor until the claims of creditors against the debtor have been paid in full. * * * In Jenkins v. National Surety Company, 277 U.S. 258, 48 S. Ct. 445, 446, 72 L. Ed. 874, the plaintiff surety sought to compel against the defendant receiver the payment of dividends upon its claim upon an indemnity agreement executed by the principal debtor. In holding that by taking a separate indemnity agreement the surety cannot deprive the creditor of the benefit of the foregoing rule, the court in that case said: 'The rule would go for naught if, by claiming indemnity instead of subrogation, the surety could achieve the same result. The same policy against permitting a surety to compete with the creditor for the insolvent debtor's assets requires that the surety be denied subrogation to security given to a creditor for several debts for only one of which the surety is obligated. * * *.'" (Citations omitted.) 268 NW at 905.

■　It is often said that the subrogee enjoys the benefit of any advantage the subrogor had, such as the right to

follow trust funds, to enforce liens, to enforce a mortgage, and to enjoy any priority that the subrogor enjoyed, not only as to the person against whom claim is made, but against other creditors, as well. Simpson, Suretyship § 47 (1950); Stearns, Suretyship § 11.5 (5th ed 1951). We see no reason why the subrogee, whose derivative rights normally include the benefits of all advantages available to the subrogor as to all persons, should not as well be subject to the limitations on the subrogor's right of recovery as to all persons. We therefore hold that in a receivership proceeding, where a priority dispute exists between creditors of the same class, a judgment creditor whose claim is derived from another by way of subrogation, stands in the same position as would the subrogor, if the dispute were between the subrogor and the creditor claiming priority; and the subrogee is subject to any defenses available against the subrogor. In this case, Lewelling, by virtue of the fact that he has a judgment against First California, is entitled to priority.

Reversed.