728 P.2d 459

John KUNTSMAN [Kunstman] and Joan Kuntsman [Kunstman], his wife, Claimants-Appellants,

v.

GUARANTEED EQUITIES, INC., a New Mexico corporation, Respondent-Appellee,

v.

Dr. Manuel FERRAN, Receiver-Appellee,

and

Robert Holzapfel, Claimant-Appellee.

No. 16166.

Supreme Court of New Mexico.

Nov. 5, 1986.

**50**

George H. Perez, Bernalillo, for claimants-appellants.

Timothy J. Dreher, Albuquerque, for receiver-appellee.

Robert Holzapfel, Albuquerque, pro se.

## OPINION

WALTERS, Justice.

The director of the Financial Institutions Division of the New Mexico Regulation and Licensing Department brought an action against Guaranteed Equities, Inc. (Equities), a mortgage broker, charging illegal and fraudulent activity. The court appointed a receiver and held a hearing on the receiver's motion to determine distribution of certain loan proceeds claimed by John and Joan Kuntsman [Kunstman] and by Robert Holzapfel. The trial court, finding that both Kuntsmans and Holzapfel were investors, apportioned the proceeds between the Kuntsmans and Holzapfel, and Kuntsmans appeal. We reverse.

Continental Mortgage Exchange, Inc. (Continental), the alter ego of Equities, offered a loan for the purchase of real property for sale, to be secured by a deed of trust. The loan, amounting to $14,435, was to be borrowed by Conkling and Wilson. In October 1982, the Kuntsmans entered into an "Agreement for Investment" in a deed of trust in the amount of $14,435. The Kuntsmans issued three checks payable to "CME Trust Fund" in the total amount of $18,435. Wilson executed a deed of trust and an installment promissory note, both in favor of Equities as trustee for the Kuntsmans. The Kuntsmans thereupon received title insurance and duly recorded the deed of trust on October 21, 1982.

In May 1983, Holzapfel also entered into an agreement with Continental to fund the Conkling-Wilson loan. This loan also was to be secured by a promissory note and a deed of trust. Holzapfel, however, received neither a promissory note nor a deed of trust. In the same month, Holzapfel issued a check to "CMI Trust Account," in the amount of $14,435. He did not purchase title insurance and his interest was not recorded in any manner. In October 1983, Capital Title Company issued a $16,321.54 check payable to Equities, trustee for Holzapfel, and this amount is presently in the possession of the court-appointed receiver.

Kuntsmans contend that their recorded interest, being analogous to a mortgage, is superior to Holzapfel's unrecorded interest; that, therefore, Kuntsmans are entitled to the entirety of the loan proceeds. Holzapfel, of course, seeks to uphold the trial court's decision. He argues that Equities, the trustee and legal agent of both parties, acquired legal title and thereby placed the Kuntsmans and Holzapfel on equal footing as creditors.

New Mexico has never departed from the early definition of a "mortgage" as a "conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition." *Palmer v. City of Albuquerque*, 19 N.M. 285, 298, 142 P. 929, 933 (1914). A deed of trust in the nature of a mortgage is "given under an agreement, with the intention that it is to act as security, or create a lien, for the performance of an obligation, usually the payment of a debt." 59 C.J.S. *Mortgages* § 5, at 31. "Such an instrument, although executed to trustees, instead of directly to the bondholders, and although in form a conveyance in trust, is essentially a mortgage, and will

be construed and enforced as such." *Id. See also Phoenix Title and Trust Co. v. Stewart,* 337 F.2d 978 (9th Cir.1964), *cert. denied,* 380 U.S. 979, 85 S.Ct. 1335, 14 L.Ed.2d 273 (1965); *Jaramillo v. McLoy,* 263 F.Supp. 870 (D.Colo.1967); *National Acceptance Co. of America v. Exchange National Bank of Chicago,* 101 Ill.App.2d 396, 243 N.E.2d 264 (1968).

■ We agree with the Kuntsmans that the deed of trust is, in essence, a mortgage and should be enforced as a mortgage. Kuntsmans' deed of trust, being treated as a mortgage, is governed by the recording provisions of NMSA 1978, Sections 14–9–1 to –2. Section 14–9–1 provides for all writings affecting title to real property to be recorded in the proper county clerk's office. Under Section 14–9–2, such recording gives "notice to all the world of the existence and contents of the instruments so recorded from the time of recording." We have held that New Mexico's recording statute is a notice statute which is intended to protect " 'innocent purchasers for value without notice of unrecorded instruments who have invested money in property.' " *Angle v. Slayton,* 102 N.M. 521, 523, 697 P.2d 940, 942 (1985) (quoting *Jeffers v. Doel,* 99 N.M. 351, 353, 658 P.2d 426, 428 (1982)). Holzapfel had constructive notice of the Kuntsmans' interest. *See Angle v. Slayton.* Indeed, Holzapfel admitted he had actual notice of Kuntsmans' interest. He therefore was not an innocent purchaser for value without notice. *See Jeffers v. Doel.* Having recorded their interest in the encumbered property prior to the time Holzapfel invested in the same property, the Kuntsmans did all that is statutorily required to protect their interest in the property and thus to gain priority status. *See Angle v. Slayton.*

Holzapfel attempts to persuade us that the appointment of a receiver affects the priority of the existing liens to the extent of making pro rata distribution appropriate in the present case. Kuntsmans cite *Ivy Hill Association v. Kluckhuhn,* 298 Md. 695, 472 A.2d 77 (1984), in answer, to maintain that even when a receiver is appointed, existing priorities are undisturbed.

■ We agree with the court's statement in *Ivy Hill,* that "[t]he appointment of a receiver neither affects title nor determines any rights to the property, but rather the receiver takes possession of the property subject to those liens and encumbrances which already may exist." *Ivy Hill Association v. Kluckhuhn,* 298 Md. at 704–705, 472 A.2d at 82. *See also S.W. Rawls, Inc. v. Forrest,* 224 Va. 264, 295 S.E.2d 791 (1982); *Barber v. Reina Nash Motor Co.,* 72 Wyo. 65, 260 P.2d 928 (1953); 3 *R. Clark, A Treatise on The Law and Practice of Receivers* § 667.4 (3d ed. 1959); 75 C.J.S. *Receivers* § 128 (1952). Accordingly, the Kuntsmans' superior interest in the property was not affected by the appointment of a receiver.

■ Consequently, although priorities ordinarily do not exist between creditors of the same class, and receivership assets are shared ratably, *State ex rel. Healy v. Smither,* 290 Or. 827, 626 P.2d 356 (1981), preferences will arise by reason of a statutory provision or a common law principle, 75 C.J.S. *Receivers* § 283 (1952), or when one claim intrinsically confers an equity superior to that of another claim. *State ex rel. Healy v. Smither.*

Having recognized the superiority of the Kuntsmans' interest by reason of recording, *see Angle v. Slayton,* the Kuntsmans are entitled to claim the entirety of the receivership assets in the Conkling-Wilson loan.

We reverse and remand for entry of judgment in favor of the Kuntsmans.

RIORDAN, C.J., and STOWERS, J., concur.