730 P.2d 1189

**Mary M. McINERNY, Director Financial Institutions Division, Regulation and Licensing Department, State of New Mexico, Petitioner-Appellee,**

v.

**GUARANTEED EQUITIES, INC., a New Mexico corporation, Respondent-Appellee,**

v.

**Donald A. PETERSON, et al., Petitioners-in-Intervention-Appellants.**

**No. 16086.**

Supreme Court of New Mexico.

Dec. 31, 1986.

Bryan, Flynn-O'Brien & Estes, Charles N. Estes, Jr., Albuquerque, for petitioners-in-intervention-appellants.

Singer, Smith & Williams, Robert N. Singer, Richard Norton, Barry D. Williams, Albuquerque, for respondent-appellee.

Paul Bardacke, Atty. Gen., Kevin Reilly, Asst. Atty. Gen., Santa Fe, for petitioner-appellee.

## OPINION

SOSA, Senior Justice.

This action arose when the director of the Financial Institution Division of the Regulation and Licensing Department charged Guaranteed Equities, Inc. (Equities) with illegal and fraudulent activity. The trial court granted the director's petition to appoint a receiver and held a hearing to determine the distribution to investors of proceeds from the sale of the collateral securing their loans. This Court has recently ruled on a related disposition by the trial court. *See McInerny v. Guaranteed Equities, Inc.*, 105 N.M. 49, 728 P.2d 459 (1986) (*McInerny I*).

In this case also, the court below adopted the receiver's recommendation to distribute the proceeds on a pro rata, rather than on a priority basis. The group of investors whose interest was first recorded appeals. We reverse.

The issue we must decide is whether the "hybrid" loans brokered by Equities and secured by deeds of trust more closely resemble mortgages or investments in securities.

## BACKGROUND

The transactions in question here were typical pieces of a complicated swindle scheme engineered by Equities and its alter ego, Continental Mortgage Exchange, Inc. (Continental). Continental would act as a broker of real estate mortgage loans, secured by deeds of trust that named Equities as trustee. Individuals like appellants "invested" in Continental and received in return "real estate mortgage notes" and individual deeds of trust.

The scheme collapsed in part because the properties were exceedingly overappraised and in part because the same loan would be sold to several groups of investors. Revenue from subsequent investors was supposed to repay earlier ones; often it simply disappeared. In the instant case the property in question was a lot and warehouse in Bernalillo County which had been appraised at $185,000. In October 1981, December 1981, and March 1982, Richard and Ruby King, husband and wife (Kings), obtained three separate loans of $30,000 each, all secured by the same property.

Each loan was syndicated by Equities to a group of several individual investors, referred to as Group I, Group II, and Group III. Appellants are the investors who represent Group I. In differing amounts these investors contributed the total of $30,000 that was loaned to the Kings in October, 1981.

Each individual lender/investor entered separately with Continental into an "Agreement for Investment in Deed of Trust Loan." Equities acted as escrow agent and trustee. The real estate mortgage note and "master" deed of trust executed by Kings nominated Continental as payee, "subject to: Deeds of Trust in favor of" the individual named investors. The Kings executed separate deeds of trust to Equities as trustee for each individual investor, but these were never recorded. Only the master deed of trust was recorded, on October 29, 1981, and again to correct a spelling error, on November 6, 1981.

On December 21, 1981, the Kings executed a second master deed of trust and real estate mortgage note, this time for $60,000, again payable to Continental with Equities acting as trustee. The first mortgage was mentioned expressly, but only Continental was named as mortgagee. Only the investors in Group II were named as beneficiaries on these master documents which were recorded on December 29, 1981. No mention was made of the underlying indebtedness in the "Agreement for Investment" offered to Group II.

There were no master documents for the investors in Group III, who each received an installment promissory note and a deed of trust from the Kings. The notes and deeds named Equities as trustee, gave the same property as security and were made expressly subject to the two prior deeds of trust that named Equities as trustee. These third deeds of trust were executed on March 11, and recorded on March 12, 1982.

The Kings defaulted on their payments and, on July 30, 1982, executed a quitclaim deed to Continental as trustee for all the investors in the three groups. No investor ever received any repayment.

The State instituted these proceedings on August 19, 1983, asking for a receiver to be appointed on the grounds that Equities was unlicensed and engaging in illegal and fraudulent security practices. The court appointed a receiver to collect and distribute the remaining loan proceeds. The receiver sold the King property for $45,000, only half of the total amount (excluding interest) claimed by the three groups of investors.

To determine the proper distribution of these funds, the court held a hearing on February 27, 1985. The receiver proposed that, since all of the investors were innocent victims of a scheme to defraud them, all should share equally in the loss. Adopting the receiver's recommendation, the court ordered that the proceeds be distributed to all investors on a pro rata basis. From that judgment the investors in Group I appealed to this Court.

The receiver argues here, as below, that this is an unprecedented problem, to which the normal rules of priority and recording do not apply, urging as a matter of public policy that similar schemes will be best deterred by affirming the trial court. He points out that all (not just the first) of the investor groups relied on representations by Continental or Equities that the property securing their loans was unencumbered [even though the prior recorded deeds of trust indicated otherwise].

Furthermore, the receiver asserts that all the investors accepted by acquiesence the creation of a tenancy in common in the property after it had been quitclaimed to Equities. Indeed, but for the intervention by the state, the rights of these investors would be determined, not by principles of mortgage priority, but rather by the bankruptcy courts.

We find the foregoing arguments plausible, but not persuasive. The record in this case does not indicate affirmatively that the three investor groups in any way ratified a tenancy in common by the fact of Equities accepting a quitclaim deed from the Kings. Rather, the lenders retained the expectation that their interests would be protected by the recorded instruments.

As this Court held in *McInerny I*, the law in New Mexico is clear that, "the deed of trust is, in essence, a mortgage and should be enforced as a mortgage." *Id.* at 2. The same principle applies with equal

force here. Despite the fact that the individual investors are not named in the "master" deed of trust issued to Group I, there is no question that the deed was duly recorded first and that the latter deeds were expressly made subject to it. The investors in Group II and Group III thus had record notice of the existence of the first deed of trust. Indeed, many of them had actual notice of the earlier indebtedness. We hereby uphold the policy underlying the recording statutes, NMSA 1978, Sections 14–9–1 and –2, by concluding that priority should prevail. *See Angle v. Slayton,* 102 N.M. 521, 697 P.2d 940 (1985).

The consequence of this conclusion, as appellants point out, is that the investors in Group I are entitled to have their lien satisfied from the sale proceeds of the property.

In addition to the return of their principal, the appellants are entitled to the interest contractually specified from the date of default. Any remaining proceeds should be distributed to the investors in Group II, in proportion to their contributions.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

RIORDAN and WALTERS, JJ., concur.