CONFECCOES TEXTEIS DE VOUZELA,
LDA.; and Montezela–Metalomecanica
E Fundicao, Lda., Appellants,

v.

RIGGS NATIONAL BANK OF
WASHINGTON, D.C.

No. 91–7211.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 22, 1993.

Decided June 11, 1993.

Larry Klayman, Washington, DC, argued the cause and was on the brief for appellants.

Robert J. Shaughnessy, Washington, DC, argued the cause for appellee. With him on the brief were Paul M. Wolff and Gerson A. Zweifach.

Before BUCKLEY, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Two Portuguese corporations, Confeccoes Texteis de Vouzela, Lda. ("CTV") and its subsidiary, Montezela–Metalomecanica e Fundicao, Lda., claim that Riggs National Bank of Washington owed them a duty of care as the "confirming bank" on an international letter of credit. We find that the Uniform Commercial Code ("U.C.C.") governs the relationship of the parties to this dispute and that under it a confirming bank owes no duty to the "account party," CTV. We therefore affirm the district court's order of November 13, 1991, dismissing CTV's complaint with prejudice for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

### A. Letters of Credit

Merchants developed the letter of credit over seven hundred years ago to "relieve [the] simple tension" generated by a seller's "hesit[ance] to give up possession of his goods before he is paid," and a buyer's wish to "control [ ] the goods before parting with his money." 2 James J. White & Robert S. Summers, Uniform Commercial Code § 19–1, at 1 (3d ed. 1988). A letter of credit transaction runs essentially as follows:

the buyer arranges for a bank—whose credit the seller will accept—to issue a letter of credit in which the bank agrees to pay drafts drawn on it by the seller if, but only if, such drafts are accompanied by specified documents, such as bills of lading or air freight receipts, representing title to the goods that are the subject matter of the transaction between buyer and seller.

The bank undertakes this obligation for a specified period of time.

*American Ins. Ass'n v. Clarke,* 865 F.2d 278, 282 (D.C.Cir.1988) (quoting Verkuil, *Bank Solvency and Guaranty Letters of Credit,* 25 Stan.L.Rev. 716, 718 (1973)). Thus a credit transaction deals in documents and is wholly independent of the underlying transaction in goods. John F. Dolan, The Law of Letters of Credit ¶ 2.01, at 2–3 (2d ed. 1991) ("Letters of Credit").

In letter of credit parlance, the bank that issues the credit is called the "issuing bank." The seller of the goods is the "beneficiary," and the buyer of the goods is the "account party." *Id.* ¶ 1.01[3], at 1–6. *See also* 2 White & Summers, Uniform Commercial Code § 19–3, at 15. In many letter of credit transactions, as in the one at issue here, a bank in the seller's community receives the issuing bank's credit and "engages" that it will honor it. Such a bank is known as the "confirming bank." Dolan, Letters of Credit ¶ 1.03, at 1–12.

### B. Facts

CTV, a corporation with its principal place of business in Portugal, entered into an agreement with certain American vendors ("the beneficiaries") to purchase a computer-controlled production system. The system was to be delivered to CTV's plant in Portugal by December 31, 1988, at a cost of $172,060. CTV's Portuguese bank, Caixa Geral de Depositos ("Depositos"), served as the issuing bank and issued an international letter of credit that named CTV as the account party. Riggs National Bank agreed to serve as the confirming bank in the United States.

The terms of the letter of credit, as amended, provided that (1) before payment would issue, Riggs would be presented with an exact description of the items to be shipped; (2) December 31, 1988, would be the final date for shipment; and (3) the airport of departure would be Washington, D.C. In January 1989, the beneficiaries presented documents to Riggs that did not conform with these requirements: The air waybill of lading lacked entries for the flight date and flight number and indicated that the

shipment was being made from Seattle, Washington, not Washington, D.C.

On January 10, 1989, Riggs advised the issuing bank, Depositos, by telex that the air waybill showed Seattle as the airport of departure. Two weeks later, Riggs paid the beneficiaries, forwarded the documents by registered air mail, and debited Depositos' account. On January 31, Depositos contacted Riggs to ask whether the necessary documents had been forwarded and whether its account had been debited. Riggs advised Depositos that the documents had been sent on January 24 and that its account had been debited on the same day, whereupon Depositos debited CTV's account in Portugal.

The goods shipped did not match the description in the documents and were, in fact, worthless to CTV. CTV filed a complaint in the United States District Court for the District of Columbia, alleging that Riggs had wrongfully honored Depositos' letter of credit by accepting documents that did not conform to the terms of the agreement. The complaint contained three counts: a tort claim, an allegation of violations of the U.C.C., and a claim for breach of warranty. District Judge Lamberth granted Riggs's motion to dismiss the complaint for failure to state a claim, holding that "a confirming bank on a letter of credit owes no legal duty to a party in plaintiff's position." *Confeccoes Texteis de Vouzela, Lda. v. Riggs National Bank,* No. 91–0768, 1991 WL 255469 (D.D.C. Nov. 13, 1991). This appeal followed.

## II. ANALYSIS

CTV advances three reasons for setting aside Judge Lamberth's order dismissing its complaint: First, it argues that Riggs owed it a duty, under the U.C.C., to act with good faith and care; second, that it was liable, under common law tort principles, for its negligence in accepting the nonconforming document; and third, that Riggs's confirmation of the credit constituted a warranty that ran with the document to CTV. We reject each of these arguments for the reasons set forth below.

### A. Uniform Commercial Code

■ Article 5 of the U.C.C. is concerned with letters of credit. It "treat[s] credits as unique devices" and sets out its own "formal requirements" governing, inter alia, the relationship among the parties to the credit transactions. Dolan, Letters of Credit ¶ 2.01. The District of Columbia has adopted these provisions. *See* D.C.Code Ann. §§ 28:5–101 to 5–117 (1991).

Under the D.C.Code, a confirming bank acquires the rights and obligations of the issuing bank. *Id.* § 28:5–107(2). In doing so, it accepts two duties: to perform its tasks in good faith and to ensure that the documents in the transaction conform on their face with the letter of credit's requirements. *Id.* § 28:5–109. *See also Instituto Nacional de Comercializacion Agricola v. Continental Ill. Nat'l Bank & Trust Co.,* 858 F.2d 1264, 1270 (7th Cir.1988) (*"Indeca"*).

■ The confirming bank's only "customer" is the issuing bank. D.C.Code Ann. § 28:5–103(1)(g) ("A 'customer' is a buyer or other person who causes an issuer to issue a credit. The term also includes a bank which procures issuance or confirmation on behalf of that bank's customer.") Taken together, sections 28:5–107(2) and 28:5–103(1)(g) establish that the *only* duty owed by a confirming bank is to *its* customer, the issuing bank. Thus, under the U.C.C., as adopted in the District of Columbia, Riggs owed no duty to the account party, CTV. This reading of the Code conforms with that of two of our sister circuits, both of which agree that under the U.C.C., as adopted in identical form in the state codes at issue, a confirming bank owes a duty only to its customer, the issuing bank, and not to the issuing bank's customer, the account party. *See Indeca,* 858 F.2d at 1269–70 (Illinois); *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana de Navegacion,* 765 F.2d 1306, 1308–09 (5th Cir.1985) (Louisiana).

### B. Liability in Tort

■ CTV offers the alternative argument that its claim against Riggs may be pursued on the basis of common law tort principles. Again, we join the Fifth and Seventh Circuits

in rejecting this argument. *See Indeca*, 858 F.2d at 1268–70; *Auto Servicio*, 765 F.2d at 1308–09.

CTV claims that as the real party-in-interest in the credit transaction, it had a special relationship with Riggs; and because it was entirely foreseeable that it would be injured by Riggs's actions, CTV asks us to find that Riggs may be held liable for those injuries in tort. Specifically, CTV asserts that it was harmed by Riggs's negligent acceptance of nonconforming documents, by its failure to communicate the deficiencies in the documents to Depositos or to CTV, and by its misrepresentation of the contents of the documents in its telex to Depositos before it honored the letter of credit. CTV finds statutory authority to bring such a suit in section 28:5–102(3) of the D.C.Code, which notes that Article 5

> deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this subtitle or may hereafter develop. The fact that this article states a rule does not itself require, imply or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this article.

D.C.Code Ann. § 28:5–102(3). CTV suggests that in light of the flexibility permitted by this section, we may apply common law tort principles to this case.

The commentary accompanying the U.C.C. recognizes, however, that "[t]he rules embodied in the Article can be viewed as those expressing the fundamental theories underlying letters of credit." Hawkland & Holland UCC Series § 5–102 comment 2—(Art. 5). We take this to mean that the Code's flexibility "should not be mistaken for approval to range far and wide over the legal landscape in search of legal theories to invoke against the parties to a letter of credit transaction. [Rather, it] is limited by the underlying policies of letter of credit law and Article 5." *Indeca*, 858 F.2d at 1269.

As noted by the Fifth Circuit, "[t]he exchange function of the letter of credit rests upon objective predictable standards with defined expectations and risks." *Auto Servicio*, 765 F.2d at 1308. Circumventing the explicit

statutory scheme by looking to tort principles would undermine that objectivity and predictability and would therefore be inconsistent with the dictates of Article 5. *Id.* Furthermore, to broaden the confirming party's duty, as defined by the Code, to include the account party—a party with whom it had never dealt—"would discourage rather than encourage use of the [letter of credit] device." Dolan, Letters of Credit ¶ 6.07 at 6–73 (discussing *Indeca* ).

CTV also advances a policy argument: Riggs must not be allowed to escape responsibility for its wrongdoing. The fact is, of course, that if Riggs indeed failed in its duty (a duty that, under the Code, is owed exclusively to Depositos), it will be liable to Depositos which, in turn, will be liable to CTV for any losses incurred as a result of Riggs's acceptance of the nonconforming documents. CTV complains that this roundabout approach is "ineffective and circuitous." It is not entirely clear why it is more effective or less circuitous for CTV, a Portuguese corporation, to sue the confirming bank in the United States rather than to proceed directly against the issuing bank in Portugal. But even if considerations of convenience favored direct action against Riggs, we are faced with the countervailing consideration that the commercial utility of letters of credit depends in significant part on the statutorily defined lines of responsibility that attach to them.

We find, therefore, that the U.C.C. governs this transaction and that adoption of common law tort principles would be contrary to its goals and policies. CTV's tort claim must therefore fail as a matter of law.

## C. Warranty

■ In its brief, CTV asserts that Riggs specifically acknowledged that it was subject to the warranty provisions of section 28:5–111(2) of the D.C.Code when it stamped the following language on the letter of credit:

> We confirm the credit and thereby undertake that any draft drawn under and presented in compliance with the terms of the credit will be duly honored on due presentation to us.

This begs the question, of course, as to who are the beneficiaries of the statutory warranties. CTV did not argue in its brief, or at oral argument (where the warranty issue was not discussed), that section 28:5–111(2) provides it with a cause of action against Riggs. We therefore do not address that issue. Rather, CTV attempts to read into Riggs's stamped declaration a promise that extended Riggs's liability under the warranties to any party that handles the document, regardless of any statutory limitations on them.

We find nothing in Riggs's stamped declaration that even hints at a promise to any parties other than those who might duly present the appropriate drafts to Riggs. We therefore reject CTV's warranty claim.

### III. CONCLUSION

As adopted in the District of Columbia, Article 5 of the U.C.C. constructs a framework of carefully chosen rights and liabilities surrounding the letter of credit. Within this framework, the confirming bank owes no duty to the account party. In light of this limitation and the policies underlying this unique commercial instrument, we decline to impose common law tort liabilities on Riggs. We also reject CTV's attempt to read a warranty into Riggs's stamped declaration. The decision of the trial court is therefore

*Affirmed.*