**TOKYO KOGYO BOEKI SHOKAI, a Japanese corporation, Plaintiff–Appellant,**

v.

**UNITED STATES NATIONAL BANK OF OREGON, Defendant–Appellee.**

No. 96–35175.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1997.

Submission Deferred May 9, 1997.

Resubmitted Sept. 16, 1997.

Decided Sept. 19, 1997.

Dennis H. Markusson, Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, Colorado, and James L. Hiller, Lane Powell Spears Lubersky, Portland, Oregon, for the plaintiff-appellant.

John F. Neupert and Bruce L. Campbell, Miller, Nash, Wiener, Hager & Carlsen, Portland, Oregon, for the defendant-appellee.

Before BOOCHEVER, BRUNETTI and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

In this case we answer the question that must be on everyone's mind: May a letter of credit applicant subrogate to the position of the issuing bank and sue the confirming bank for fraud, negligence and violation of the Uniform Commercial Code?

Tokyo Kogyo Boeki Shokai (Kogyo), a Japanese importer, contracted with West Road America to import construction panels from Washington state to Japan. To finance the deal, Kogyo had Mitsubishi Bank issue a letter of credit, initially for $1,600,000. West Road's banker, United States National Bank of Oregon (National), agreed to be the confirming bank.[1]

Unusually, the Mitsubishi letter of credit contained a "red clause."[2] Ordinarily, to draw on a letter West Road would have had to provide National with documents-a draft, invoices and the like-showing it had shipped the panels. However, the red clause allowed West Road to receive advances even before shipping the panels upon presenting certain documents, including a written undertaking that it would later present the normal papers. Like many international letters of credit, this one contained a clause adopting the terms of the Uniform Customs and Practice for Documentary Credits (oddly abbreviated by lawyers as UCP).

According to the amended complaint, West Road received $1,436,000 in advances under the first letter of credit without ever shipping any panels. Nice work if you can get it.

---

1. A guide for the perplexed on letter of credit terminology: Kogyo, the applicant, paid for goods using the letter; Mitsubishi, the issuing bank, contracted to pay for the applicant (on the agreement, of course, that the applicant would later pay it back); National, the confirming bank, acted as an intermediary by passing money to West Road and documents to Mitsubishi; and West Road, the beneficiary or customer, got paid using the letter.

2. A "red clause" is so called because it is often printed in red so as to call attention to it. It may also be the color of the face of whomever at Kogyo agreed to this provision.

After that letter expired, Mitsubishi issued a second one on the same terms for $1,780,000. This time West Road shipped some panels, about half the number ordered, but at twice the agreed-upon price. Like clockwork, National paid West Road, Mitsubishi paid National, and Kogyo paid Mitsubishi. With an ordinary letter of credit, both Mitsubishi and Kogyo could have refused to pay if the documents presented were non-conforming. It is unclear whether either could have refused under a letter with the red clause. In any event, neither did.

Kogyo sued National, claiming fraud, negligence and UCC and UCP violations.[3] Following the magistrate judge's recommendation, the district court dismissed. Kogyo filed an amended complaint, which was again dismissed. Kogyo appeals. It argues that subrogation allows it to step into Mitsubishi's shoes and sue National, even though Kogyo and National weren't immediately linked in the chain.

Until recent passage of UCC section 5–117, Or.Rev.Stat. § 75.1170, Oregon law did not speak clearly to subrogation of rights created by a letter of credit. Oregon cases do hold that where a secondarily-liable party pays another's debt the former may subrogate to the latter's rights. *See Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 693 P.2d 1296, 1301 (1985). However, no Oregon case applies this principle to letters of credit. The standard example of secondary liability is a guarantee-the guarantor must pay only if the principal defaults. By contrast, National argues, in a letter of credit each party is primarily liable to the next party in the chain and must pay whether or not the applicant (Kogyo) defaults. In cases from other jurisdictions this primary/secondary liability distinction has sown much confusion. The majority of cases do not allow subrogation under pre-section 5–117 versions of the UCC, agreeing with National's position that letters of credit create primary liability. *See Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co.*, 968 F.2d 357, 361–62 (3rd Cir.1992) (collecting cases).

The new UCC section allows subrogation. However, that law applies only to letters of credit issued on or after January 1, 1998. *See* S 246, §§ 27, 29, 69th Or. Leg., Reg. Sess. (1997). If the legislature thought the new law merely clarified existing rules, it would not have limited its effect to letters of credit issued after its effective date. Thus, the current Oregon legislature seems to believe that prior law did not allow subrogation. While by no means dispositive, this supports National's argument that subrogation was not allowed under prior law.

Kogyo argues that Articles 10, 15, 17 and 20 of the UCP imply it can subrogate to Mitsubishi's position. However, this does not clearly follow from the Articles' language. Article 10 merely defines what a confirming bank has undertaken to do. If anything, it defines duties to the beneficiary, not the applicant. Article 15 says banks must examine documents with reasonable care. It does not say who may sue for violation of that duty. Article 17 says banks assume no liability for the acts of others. But this does not waive liability for their own acts. Article 20(a) says "Banks utilising the services of another bank or other banks for the purpose of giving effect to the instructions of the applicant for the credit do so for the account and at the risk of such applicant." This insulates Mitsubishi from liability for National's misbehavior. It doesn't give Kogyo a right to sue National. Moreover, the UCP formalizes customary practice. *See* James J. White & Robert S. Summers, 3 Uniform Commercial Code § 26–3 (4th ed.1995). If subrogation is customary, we would expect to see more of it in the caselaw.

Kogyo also argues that under National's interpretation of the UCP it will be unable to sue, even if National engaged in fraud. Heaven forfend that a potential plaintiff be stranded with no one to sue, though West Road does present itself as a possible defendant. Moreover, the UCP doesn't prevent Kogyo from suing Mitsubishi if Mitsubishi should not have honored the documents National presented. Under Article 17 Mitsubishi is not liable for National's acts, but it remains liable for its own. Perhaps the red clause stopped Mitsubishi and Kogyo from refusing payment. If so, Kogyo should have read the red clause more carefully. Or per-

---

**3.** Apparently Kogyo could find no violations of the UPA, URE, USC or UCLA.

haps it did, and made a bargain which reflects the risk Kogyo took on. Either way, we see no reason to contort the UCP out of shape to protect Kogyo from the unfortunate consequences of a bad bargain.

Kogyo also makes several tort claims. As to negligence, National has no duty to Kogyo. Applying negligence principles would undermine the UCC. *See Confeccoes Texteis de Vouzela, Lda v. Riggs Nat'l Bank*, 994 F.2d 851, 854 (D.C.Cir.1993); *Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Illinois Nat'l Bank*, 858 F.2d 1264, 1269 (7th Cir.1988); *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana De Navegacion*, 765 F.2d 1306, 1308 (5th Cir.1985). As to fraud, Kogyo argues for fraud as a common law "gap-filler": If the UCC and UCP provide Kogyo no remedy, then the common law must. But, under the letter's terms, either Kogyo was bound to pay Mitsubishi even if National's payment was improper, or else it wasn't. If Kogyo was bound to pay, then it did not rely upon National's alleged misrepresentations, since Kogyo had to pay Mitsubishi in any event. Without reliance on the misrepresentations, there is no fraud. *See Rice v. McAlister*, 268 Or. 125, 519 P.2d 1263, 1265 (1974). If Kogyo was not bound to pay, then it should have a claim against Mitsubishi, and we need not create a fraud claim as a gap-filler.[4]

**AFFIRMED.**

BOOCHEVER, Circuit Judge, dissenting.

I respectfully dissent.

Our jurisdiction in this case is based on diversity of citizenship, and we apply the law of Oregon. Thus, we are asked to determine whether the Supreme Court of Oregon would allow Kogyo to be subrogated to Mitsubishi's right to recover from National.

On an appeal from a dismissal for failure to state a claim, we take the facts as they are stated in the complaint. We must assume, then, that National violated the terms of the letter of credit and its "red clause" when it advanced West Road initially $1,435,000 and later $1,780,000 on a second letter of credit. Mitsubishi then paid National for the amounts paid out to West Road. Under those circumstances, Mitsubishi, the issuer of the letter of credit, would certainly be entitled to recover the amount paid by National that did not comply with the agreed upon terms. *See, e.g., Confeccoes Texteis de Vouzela v. Riggs Nat'l Bank*, 994 F.2d 851, 853 (D.C.Cir.1993) (confirming bank owes duty to issuing bank). The only question is whether Kogyo, having reimbursed Mitsubishi, may be subrogated to Mitsubishi's right to recovery from National. The Uniform Commercial Code (UCC) has been adopted by the state of Oregon. At the time that the transactions in question occurred, the UCC provisions concerning the rights of an applicant, such as Kogyo, that reimburses an issuer, such as Mitsubishi, to be subrogated to the rights of the issuer as against the confirming bank were somewhat ambiguous. Few appellate courts have addressed this question, and in doing so they applied state law. Bankruptcy courts are split on whether subrogation was permissible under the pre-revision version of the UCC. *See Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co.*, 968 F.2d 357, 361–62 (3rd Cir. 1992) (majority view does not allow subrogation, but minority does permit it).

Our task is to determine as best we can whether the Supreme Court of Oregon would allow subrogation. Under these facts, I believe that it would.

First, Oregon recognizes broad subrogation rights where the equities so demand. The Supreme Court of Oregon has stated,

[s]ubrogation is a remedy which is highly favored. The courts are inclined to expand rather than to restrict the principle. Although formerly the right was limited to transactions between principals and sure-

---

4. Kogyo points to *Pubali v. City Nat'l Bank*, 676 F.2d 1326 (9th Cir.1982), as a case allowing fraud suits between non-adjacent parties to a letter of credit. But, in *Pubali* an issuing bank sued an advising bank which was also the assignee of the letter's proceeds and which collected on the letter twice. *Pubali* has no clear discussion of who owes a duty to whom, and the defendant was self-dealing in an unusual, egregious way, not merely performing the role of advising bank. Allowing a fraud claim here, where National played a typical confirming bank role, would undermine our results under the UCC, UCP and negligence. *Cf. Cenlin Taiwan Ltd. v. Centon, Ltd.*, 5 F.3d 354, 356 (9th Cir.1993) (*Pubali* rationale should not be pushed too far to include all situations where a bank is serving its self-interest in some way).

ties, it is now broad and expansive, and has a very liberal application ... the principle being modified to meet the circumstances of the individual case.

*Oregon v. Smither*, 290 Or. 827, 626 P.2d 356, 359 (1981) (citation omitted). *See also Maine Bonding & Casualty v. Centennial Insurance Co.*, 298 Or. 514, 693 P.2d 1296, 1301 (1985) (subrogation "is a doctrine which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it").

Taking the facts from the face of the complaint, the equities of this case are clear. National advanced West Road close to three million dollars despite West Road's failure to comply with the terms laid out by the letter of credit defining the parameters of such advances. Mitsubishi performed as the letter of credit required and reimbursed National for those advances. Kogyo, in its turn, did the same for Mitsubishi. In the end, National's failure to abide by the terms of the letter of credit cost Kogyo millions of dollars. As the party at fault, National "in equity and good conscience ought to pay" to Kogyo the sum that Kogyo was compelled by contract to pay to Mitsubishi. *See Maine Bonding & Casualty Co.*, 693 P.2d at 1301.

Moreover, in light of its expansive reading of subrogation rights, I believe that the Supreme Court of Oregon would interpret the UCC, as adopted by the Oregon legislature, as allowing subrogation in this context. Revised Article 5 § 5–117(b) of the UCC provides:

> An applicant that reimburses an issuer is subrogated to the rights of the issuer against any beneficiary, presenter, or nominated person to the same extent as if the applicant were the secondary obligor of the obligations to the issuer....

This revised section, which was adopted by the Oregon legislature after the events at issue took place, has not yet been interpreted by Oregon courts. In fact, Oregon courts

have never specifically addressed what subrogation rights exist in the letter of credit context. The drafters of the UCC, however, stated that the new provision merely "clarifies the subrogation rights of an Issuer who has honored a letter of credit. These rights of subrogation also extend to an applicant who reimburses...." UCC Rev. Art. 5, Prefatory Note, p.6.[1] Thus, the UCC drafters believed that the UCC as originally drafted, and adopted by the Oregon legislature, permitted subrogation.

In light of Oregon's broad subrogation doctrine, I believe that the Supreme Court of Oregon would fall in line with the UCC drafters. I would hold that the Oregon legislature originally adopted the UCC with the intention of allowing "[a]n applicant that reimburses an issuer [to be] subrogated to the rights of the issuer against" the confirming bank, Rev. UCC § 5–117(b), and would thus allow Kogyo to proceed against National.

---

1. The majority points out that Oregon's adoption of the above provision applies only to letters of credit issued on or after January 1, 1998. Majority Opinion at 1136. This is true. But, as the majority also points out, it is not dispositive. *See Kaiser Cement v. Tax Com.*, 250 Or. 374, 443 P.2d 233, 235 (1968) (applying clarifying amendment to tax code in case filed prior to 1965 notwithstanding provision in amending statute that changes were "retroactive only to January 1, 1965").