[No. 554.   October 30, 1894.]

## A. M. GENTILE, PLAINTIFF IN ERROR, v. ELLIOTT CROSSAN AND MARGARET CROSSAN, DEFENDANTS IN ERROR.

EJECTMENT—BOUNDARY OF LAND, ADMISSIBILITY OF PAROL EVIDENCE TO EXPLAIN LATENT AMBIGUITY IN DEED DESCRIBING.—In an action of ejectment for the recovery of certain land, where the question involved was one of boundary, and not of title, which so much of the deed to the land as involved the disputed boundary described as "Y del camino, a las lomas," meaning, translated into English, "and from the road to the hills," and there was strong evidence that the term "las lomas," meant in that vicinity, a certain kind of hills, but there was evidence offered of other terms used by the natives to describe hills, which the court excluded, and it was not certain what kind of hills were meant—Held: The use of the term "las lomas" constituted a latent ambiguity, which could be explained by parol, and the court erred in excluding from the consideration of the jury evidence of other terms used by the natives in describing irregularities of the earth's surface.   Putnam v. Bond, 100 Mass. 60; Atkinson v. Cummins, 9 How. 479.

ERROR, from a judgment in favor of defendants, to the Second Judicial District Court, Bernalillo County. Judgment reversed.

The facts are stated in the opinion of the court.

CATRON & SPIESS for plaintiff in error.

The defendants are to be treated in this case as not being bona fide purchasers without notice.   Moelle v. Sherwood, 148 S. S. 21.   See, also, Id. 29.

The instructions in regard to a "recognized dividing line" acquiesced in by adjoining proprietors, "an established line," etc., being without any testimony to support them, were misleading, and from the persistency with which they were dwelt on by the court were calculated to prejudice the jury.   C. R. R. & P. Co.

v. Housten, 95 U. S. 697; Michigan Bank v. Eldred, 9 Wall. 544; U. S. v. Breitling, 20 How. 252.

The court erred in so instructing as to practically exclude all consideration of the acts of parties as an aid to contemporaneous construction. Steinbach v. Stewart, 11 Wall. 566; Read v. Canal Co., 8 How. 289; Rhett v. Poe, 2 Id. 457.

Ordinarily a reference to what are called surrounding circumstances is allowed for the purpose of ascertaining the subject-matter of a contract, or explaining its terms. Maryland v. R. R. Co., 22 Wall. 113.

The court erred in refusing to allow the jury to consider the testimony as to the local meaning of the term "las lomas," and in instructing them that this term meant "both large and small hills." See Patch v. White, 117 U. S. 210; Thorington v. Smith, 8 Wall. 1; "Confederate Note Case," 19 Id. 548; Bradley v. Bockett Co., 13 Pet. 89; Lind v. Bower, 11 Cal. 194; Calaban v. Stanley, 57 Id. 476; Reamer v. Nesmith, 34 Id. 476; Singleton v. Insurance Co., 66 Mo. 63; Thompson v. Sloan, 35 Am. Dec. 546; Miller v. Stevens, 100 Mass. 518.

Where there is an election between two meanings, it is, properly, a question for the jury. Broom's Legal Maxims, pp. 617, 618; 4 Phil. on Ev. 517; Dorgan v. Weeks, 5 So. Rep. 580; Harvey v. Vandergrift, 89 Pa. St. 346; Greenl. on Ev., sec. 280.

CHILDERS & DOBSON and BERNARD S. RODEY for defendants in error.

If a question is objectionable in form or substance it must be objected to at the time it is submitted to the jury, and not afterward. Gerhart v. Swarty, 57 Wis. 24; Brooker v. Webber, 41 Ind. 426; Many v. Griswold, 21 Min. 506; Dupoint v. Starring, 42 Mich. 492.

Words can not be ambiguous because they are unintelligible to a man who can not read. 1 Best on Ev., p. 427.

Language, not technical, in a deed must be taken in its ordinary and usual meaning. Bradshaw v. Bradbury, 64 Mo. 337; 2 Devlin on Deeds, sec. 837.

The rule that gives to words, which by the known usage of trade or business have acquired a peculiar sense or meaning, a different and distinct meaning from their popular sense, is never applied except in suits between the parties to an instrument. 1 Greenl. Ev., sec. 279.

In all cases in which evidence of local usage has been admitted to vary the ordinary meaning of words used in a deed, it has been held necessary to show that the usage was known to the contracting parties, and that they contracted in reference to it. Best on Evidence.

It is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, in order to give a definite meaning to the language used in the deed, and to show the sense in which the particular words were probably used by the parties, especially in description, and when the meaning is doubtful the acts of the parties may be given in evidence to show the intent. Salisbury v. Andrews, 19 Pick. 250; 2 Devlin on Deeds, sec. 840.

Where a deed is uncertain in the description of its boundaries, courts will resort to the construction given to it by the parties to the instrument. Reed v. Proprietors of Locks and Canals, 8 How. 287.

The instruction only gives the general rules in questions of disputed boundaries, and is fully sustained by the following authorities: McArthur v. Henry, 35 Tex. 804; George v. Thomas, 16 Id. 74; Houston v. Sneed, 15 Id. 307; Singleton v. Whiteside, 5 Yerg, 18;

Goodridge v. Dustin, 5 Metc. 363; Adams v. Rockwell, 16 Wend. 285; Dibble v. Rogers, 13 Id. 536; Chew v. Morton, 10 Watts, 321; Gray v. Berry, 9 N. H. 473; Jackson v. Ogden, 7 Johns. 238; Gilchrist v. McGee, 3 Yerg. 455; Nichol v. Lyttle, 4 Id. 456.

If the use, by the court, of the words "you will find for the defendants" in its instructions, were merely inadvertent, then no injury was done plaintiff. 54 N. W. Rep. 470. See, also, 35 Pac. Rep. 453; 53 N. W. Rep. 316.

It is not error to refuse a request for a special finding, if the answer would not control a contrary general verdict. 14 S. E. Rep. 414; 29 N. E. Rep. 1106; 51 N. W. Rep. 232; 42 Mich. 492; 4 N. W. Rep. 160.

FREEMAN, J.—This is an action of ejectment brought by the plaintiff in error against the defendants in error to recover a certain piece of land, described in the declaration as lying in the suburbs of the city of Albuquerque. There was a verdict and judgment for the defendants, and plaintiff brings error. There are thirty assignments of error, but, for the purposes of the present determination, it is unnecessary to consider other than the assignments numbered from 7 to 15 inclusive.

The question involved is one of boundary, and not of title. So much of the deed as involves the disputed boundary is as follows: "And from the road to the hills." The original of the deed is in the Spanish language, in which language the clause just quoted reads, "Y del camino a las lomas." The word "lomas" means hills, and "las lomas" means "the hills." It was contended on the part of the defendants that the word "lomas" (hills) was used in the deed in its most ordinary sense, to mean a rise in the ground; and the

ADMISSIBILITY of court in accordance with this view, in-
parol evidence to
explain latent structed the jury, that "both large and
ambiguity in
deed describing small hills are included in the term 'las
boundary of
land.          lomas.' " And again the jury were
instructed that they had "no right, for the purpose of
evading the terms of the deed, to characterize any hill,
so long as it is a hill, even though it should happen to
be a small one, as an 'altido' or 'matoral' or 'lomita.' "
The court further instructed the jury that whenever
"land rises from a comparatively level plain, and keeps
on rising to a considerable height, until the same
reaches a mesa or table-land, such rise in the ground
is necessarily a hill." And again the jury were
instructed that "what las lomas are is a question of
law; where las lomas are is a question of fact." In other
words, it being conceded that plaintiff's land extended
from a certain line easterly to the hills, the court
instructed the jury, substantially, that the eastern
boundary was marked by the first rise in the
land; that a rise in the land constituted a
hill; and that the plaintiff's land terminated at
the western foot of the hills, or, in the language of
the charge, "the boundary of the tract of land * * *
is the foot of the first hills encountered when running
eastwardly from the highland road." If these instruc-
tions were not substantially and materially erroneous,
the verdict was correct, and the judgment of the court
below will have to be affirmed.

The plaintiff in error, however, insists that the
term "las lomas," as used in the deed, means some-
thing more than a mere elevation or rise in the land,
and, futhermore, that, assuming that "las lomas" was
properly translated as meaning "the hills," such
description involved an ambiguity, and entitled the
plaintiff to show what hills were meant by the use of
that term. The instructions of the court required the

jury to stop at the first elevation encountered, running eastwardly from the road, and assumed, as a matter of law, that "las lomas" referred to in the deed were the first elevations encountered. The only material question, then, presented for our consideration, is as to whether, as a matter of law, "las lomas" means necessarily hills of all dimensions, whether large or small. If it does, then the charge of the court, that what "las lomas" are is a question of law, leaving to the jury to determine, as a question of fact, where they are, was correct. If, on the contrary, the term has another and different signification, as if it applies to hills of a particular character or size, then the charge was erroneous, for, in this event, it became necessary to determine in what sense the term was used. The call was to the hills. But what hills? To the first or second? The proof showed that from Edith street (the line at which defendants insist the plaintiff's land terminated), running back eastwardly, the hills rose gradually, though irregularly, reaching by intervening slopes or ladera the mesa or table-land above. A large number of witnesses were examined with a view of defining precisely the location or situation of las lomas. Quite a number of them fixed the line at Edith street, in accordance with the contention of the defendants, but quite a respectable showing is made to the contrary. In describing the topography of a country in the Spanish language, the term "las vegas" means the meadows; "ladera," a slope; "lomitas," small hills; "las lomas," the hills; and "sierras" means mountains. One of the witnesses says that the term "las lomas" means "hills of considerable height." The witness Perea, who testified for the defendants (who is a native of the country) says that "las lomas" means "hills or bluffs," and the line claimed by the defendants as the line of las lomas he characterizes as "ladera." The witness Salvador Garcia y Lopez, who is seventy years

old, and a native of the country, described the country as composed of vegas (low lands), lomitas (small hills), lomas (high hills). The witness Whiting gives substantially the same definition. Another witness, Werner, says "lomas" means "sand hills" or "rock hills." The witness Hill testifies that he has resided in Albuquerque forty-five years; that bottom lands are called "la vega;" up the incline, it is called "ladera;" that, where it starts up more abruptly, it is called the foot hills, till you get to the top of them, when it is called "las cejas of the las lomas" (the brow of the hill); that the bottom lands are "las vegas"; the slope, "ladera;" then, "las lomas;" then the "llano" or "mesa" or "plains." Richard Di Palma, a priest called by the plaintiff, testifies as follows: "The land in that vicinity, after crossing the ditches of Barelas and Griegos, follows the general slope, called by the natives 'ladera;' then, about Hill street, there is a group of hills, called by the natives 'lomitas;' then, following those lomitas on the road to Carnuel and the mountains, the same as Tijeras road, you get to a certain point, called by the natives 'La Cuesta.'

"Q. What is the English of that term? A. Well, it is a slope, and it is right there where you enter into what the natives call the 'lomas.' After crossing the lomas, you come to the plains." The witness Perfecto Armijo, called by the defendants, testified as follows: "Q. Do you know what they call the ground down between the railroad track and the acequias? A. Yes, sir. Q. What did they call it in Spanish? A. Between the acequia and the railroad, they called it 'La Vega.' Q. What do they call the land above the acequias in Spanish? A. The 'Ladera,' usually. Q. What from Edith street on up? A. They call it 'Ladera' up to the foot hills, and then they call it 'Pie de Las Lomas.' Q. Where do you say the Pie de Las Lomas are? A. Some call the Pie de Las Lomas, the high hills, and

some others the small ones." The witness Carabajal, who is fifty-five years of age, and a native of Albuquerque, testified that the elevation claimed by the defendants as the intended boundary is not lomas, but altidos (little hills). He is corroborated by the witness Cervantes, who says that they are hillocks, "or what we [the natives] call 'matoral,' which is sand that blows up around bushes." Jesus Lucero, aged fifty years, testifies that he has known the land in controversy all his life, and that there are no hills at Edith street that would be called "lomas;" "that there are a few hillocks or altidos."

It is not our purpose, however, to indicate an opinion that the weight of evidence supports the plaintiff's contention. Nor are we to be understood that there is not sufficient evidence to the contrary to have supported a verdict given for the defendants under proper instructions. We are clearly of the opinion, however, that the description of the land, as given in the deed, was not so free from ambiguity as to render it a proper subject for judicial construction; for, in addition to the ambiguity raised by the testimony as to the precise location meant by the use of the term "las lomas," it is a matter of common experience, of which the court will take notice, that, in the progress of the settlement of a country, particular localities will come to be designated by the use of a term otherwise general in its common acceptation. Such terms as "The Heights," "The Glade," "The Glen," "The Meadows," have in many localities, especially in the neighborhood of towns and cities, a meaning as specific as if the locality were defined by a specific proper name. This is true, not only of natural objects, but, in many instances, artificial boundaries, landmarks, and localities acquire similar significance. A familiar illustration can be found in the capital of the nation, where, among avenues bearing the names of nearly all the

states, one is so well known as "The Avenue" that its proper name is seldom used.    Innumerable examples of this character might be drawn from ancient and modern history.

We think, therefore, that the learned judge was in error in excluding from the consideration of the jury all other terms used by the natives in describing the irregularities of the earth's surface, except the single term "las lomas."    It is quite true that there is a strong array of testimony supporting the defendant's contention that there are lomas or hills at Edith street; but the evidence to the contrary, tending to show that these elevations are not what the natives call "las lomas," but "lomitas," was sufficient to entitle the plaintiff to the opinion of the jury as to that material fact.    In other words, it being in proof that there was an elevation or rise in the ground at Edith street; it being further shown that, receding further to the east, there were still greater elevations; and it being in proof that "lomitas," or "altidos" means "small hills," and that "lomas" means "hills,"—it became a question of fact whether the call in the deed for "las lomas" meant the hills at Edith street, or the hills further to the east.    This question of fact, however, was taken from the jury by the court, in its directions that "las lomas," named in the deed, meant the first elevation encountered running east from the road. The use of the term "las lomas," therefore, constituted a latent ambiguity, and was subject to explanation by parol, for it is now well settled that such an ambiguity existing in a deed may be thus explained.    Putnam v. Bond, 100 Mass. 60; Atkinson v. Cummins, 9 How. 479.    And even a patent ambiguity (meaning an ambiguity appearing on the face of the deed) may be explained by parol.    Jenny Lind Co. v. Bower, 11 Cal. 199.    The meaning of words of a foreign language may be explained by parol.    Reamer v. Nesmith, 34

Cal. 628. In explaining such ambiguity, it is a proper rule to consider all the circumstances attending the parties at the date of the transaction. As in the case at bar, it is a proper subject of inquiry to ascertain whether, at the date of the purchase made by the plaintiff, it was in contemplation of the parties to fix the eastern boundary at the line now claimed by the defendants, or whether the contemplated line ran with the crest of the highest range of hills separating the low lands or vegas from the llanos or plains. Ordinarily, when a natural object is used as a boundary, the middle of the object named constitutes the line, except in case of a range of mountains, when it goes to the comb or dividing line of the ridge. Ornbaum v. Creditors, 61 Cal. 459; City of Boston v. Richardson, 13 Allen, 154. If it should appear that the plaintiff's grantor owned land extending eastwardly from the lands bought by the plaintiff, and that the term "las lomas" was used to designate the dividing line between the plaintiff and his grantor, the plaintiff was entitled to show by parol, if he could, that "las lomas" meant the dividing ridge or line of hills separating the low lands (vegas) from the highlands (mesas); and in case of any substantial doubt the plaintiff was entitled to the benefit of any such doubt, under the well established rule that in all cases of a doubtful construction the deed must be construed most strongly in favor of the grantee; for the defendants, having purchased from the plaintiff's grantor subsequently to the purchase by the plaintiff, took subject to his deed. The judgment of the court below will be reversed, and the cause remanded, with directions to proceed in accordance with the views expressed in this opinion.

SMITH, C. J., and FALL, J., concur.