527 P.2d 792

**SEASONS, INC., a corporation, Plaintiff-Appellee,**

**v.**

**William W. ATWELL and Elizabeth S. Atwell, Defendants-Appellants.**

**No. 9872.**

*Supreme Court of New Mexico.*
*Oct. 18, 1974.*

Atwood, Malone, Mann & Cooter, Rufus E. Thompson, Roswell, for defendants-appellants.

Williams, Johnson, Houston, Reagan & Porter, Robert L. Love, John T. Porter, Hobbs, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

Plaintiff-Appellee (Seasons), alleged owner and holder of a certain note and mortgage executed by Lincoln Hills, brought this action for foreclosure and other relief against Lincoln Hills and a number of other defendants including William W. and Elizabeth S. Atwell (the Atwells). Of the defendants, only the Atwells appeared below, and they are the only appellants here.

The Atwells had been co-owners of a sizeable tract of land near Ruidoso which was considered suitable for development, subdivision and sale. They conveyed their interest to their co-owners for cash, a note and the three lots with which we are here concerned. The land was then conveyed to Lincoln Hills. On April 24, 1968, Lincoln Hills executed the promissory note in question to Ruidoso State Bank. It was secured by a mortgage which encumbered "[a]ll unsold parcels in the Lincoln Hills

Country Club Subdivision", which was said to be the entire subdivision except for fifteen described lots and two tracts "which have heretofore been sold." The Atwell lots were not excepted from the description.

On July 17, 1968, Lincoln Hills conveyed to the Atwells by warranty deed the three lots for which they had contracted, but by then the mortgage had firmly attached. Whether the conveyance of encumbered lots was in accordance with the Atwells' agreement of sale, and the significance of the encumbrance vis-a-vis the warranty covenants in the deed to the Atwells are issues which are not before us.

By a series of transfers and assignments, the note and mortgage passed to Seasons. It had meanwhile fallen into default and this action was filed.

The complaint sought foreclosure on the same land described in the mortgage excepting additional lots said to have "been sold and released of record" and these included additional tracts of one-half acre by surveyed description and twenty-two lots.

The Atwells contend there is no substantial evidence in the record to support the trial court's finding that these "additional exceptions" were released from the mortgage.

■ Their answer to the paragraph of the complaint containing the property description was a plea of want of knowledge which is tantamount to a denial. Section 21-1-1(8)(b), N.M.S.A.1953. No proof was adduced at trial touching the additional exceptions, except for a general statement that some unidentified lots had been released. The court's finding of fact No. 3 adopted the description in the complaint, stating that the mortgage covered the real estate so described, thus excluding the additional exceptions.

The Atwells argue that the mortgage may still have been in effect as to the additional exceptions, or some of them, and if so, the foreclosure should have included these tracts. Otherwise, to permit Seasons to foreclose on only part of the land subject to the mortgage would have the effect of casting an additional, unconscionable burden of debt upon the Atwells' lots.

It is perhaps significant that appellants cite to us no cases which bear upon this rather exotic proposition. Seasons stoutly claims that no rule of law or equity requires them to attempt to foreclose on property in which it claims no security interest. This has a reasonable ring to it.

In the absence of proof regarding the additional exemptions, the issue presented may be resolved by deciding whether the predicate for the Atwells' argument was well pleaded, and if so, which party bore the burden of proof.

■■ The office of the pleadings is to give the parties fair notice of both claims and defenses and the grounds upon which they rest. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Could the Atwells' denial of allegations concerning the additional exceptions be reasonably regarded as giving Seasons any notice of the present contention? The amended answer includes eight affirmative defenses, but there is no mention of the legal point now argued. The question put tends to answer itself. While the particular defense now asserted is not specifically denominated as an affirmative defense by Rule of Civil Procedure 8(c) [§ 21-1-1 (8)(c) N.M.S.A.1953], that rule provides that the pleader must affirmatively assert "any other matter constituting an avoidance or affirmative defense." 2A Moore's Federal Practice, § 8.27 [3] (2d ed. 1974) states that an affirmative defense raises matters outside the scope of the plaintiff's prima facie case, and that any matter that does not tend to controvert the opposing parties' prima facie case as determined by applicable substantive law should be affirmatively pleaded and is not put in issue by a denial. Assuming the mortgage may still have been in effect as to the additional exceptions, proving the point would have constituted an avoidance or minimizing of the burden of foreclosure upon the Atwells'

lots and, therefore, was in the nature of an affirmative defense which should have been pled. We hold that the Atwells should have affirmatively pleaded and, thereafter, proved a factual predicate for minimizing the burden of foreclosure upon their lots. Failing this, they cannot now be allowed to attack the trial court's finding as to the property covered by the mortgage based on lack of substantial evidence.

The Atwells secondly contend the trial court erred in granting judgment to Seasons against Lincoln Hills, Inc. because one of the various assignments of the note and mortgage which ultimately ended up with Seasons was improper and thus invalid.

The record shows that in the chain of transfers of the note and mortgage, an Odessa, Texas bank assigned to a Mr. Nunley, an Odessa attorney and member of Nunley & Wilson, a law partnership. Mr. Nunley was acting as agent for an undisclosed principal, Mrs. Rumbaugh, then sole stockholder of Lincoln Hills. During the attorney-client relationship, the Lincoln Hills directors resolved to convey a one-fourth interest in the encumbered land to Nunley & Wilson as security for fees, and the officers of the company were authorized and directed to prepare a deed. Whether this was actually done does not appear.

The note and mortgage were later assigned to Mrs. Rumbaugh and it is this assignment which the Atwells attack. The salient features of the document are: (1) a recitation that the assignor is the "owner and holder" of the note; (2) that it purports to "sell, transfer and convey" to the assignee the note and mortgage "and all liens and titles held by him in and to said lands"; (3) an execution in the form:

NUNLEY & WILSON
By: S/ Richard K. Nunley
Richard K. Nunley

(4) an acknowledgment reciting that Mr. Nunley executed the document "individually and in the capacity therein stated."

Mr. Nunley identified the document as being an assignment of his interest in the note and mortgage to Mrs. Rumbaugh. He offered in open court to execute another assignment to Mrs. Rumbaugh to set at rest any doubt as to the efficacy of the first one.

The court found, as one link in the chain of assignments ending in Seasons, that Mr. Nunley, individually, and as a partner in Nunley & Wilson, validly assigned the note and mortgage to Mrs. Rumbaugh, and concluded that Seasons was entitled to judgment.

The Atwells argue that the assignment to Mrs. Rumbaugh disclosed upon its face that it was from Nunley & Wilson and not from Richard K. Nunley, individually; that Nunley & Wilson did not own the note and mortgage; and that, as a matter of law, based solely upon the document, title did not pass to Mrs. Rumbaugh. They assert the acknowledgment is separate and independent from the assignment and cannot cure its infirmities, citing 1 Am.Jur.2d Acknowledgments, § 80 (1962).

The facts before us raise no question as to the due execution of the document, that is to say, its execution by a person competent to execute it. Neither is a question presented as to its genuineness. Its execution by Mr. Nunley is not questioned, his signature is not claimed to be spurious, nor is anything said to have been added to or deleted from it following execution. The sole question relates to the construction of the document—did it pass title or did it not? An assignment and the language of an assignment may be informal as long as it shows an intention on the part of the owner of a right or interest in property to transfer it. S & W Trucks, Inc. v. Nelson Auction Service, Inc., 80 N. M. 423, 457 P.2d 220 (1969). We are thus concerned with the intent of the assignor and this is to be gleaned, if possible, from the document itself. So construed, there appears to be little, if any, question that Mr. Nunley intended to pass legal title to the note and mortgage to his client. The

document seems appropriate in form to accomplish the dual function of releasing the inchoate security interest in the encumbered property which was held by the law firm and of transferring the note and mortgage, legal title to which was held by Mr. Nunley. This would be bolstered by his testimony, were it necessary to look further. The trial court correctly decided the issue.

■ The Atwells next assert error by the trial court in its decision that "foreclosure proceed as a unit and right of redemption must be of the entire realty sold * * *." They argue that the court should have allowed them to redeem their lots pro tanto by paying their pro rata share of the debt. They appear to be claiming, in effect, that the court should have ordered a separate sale of each parcel.

In Springer Corporation v. Kirkeby-Natus, 80 N.M. 206, 453 P.2d 376 (1969), which held that redemption by paying only a pro rata portion of the sale price would not be allowed, the court said:

> "It is a general rule that a mortgage is an entire thing, and must be redeemed in its entirety, and that a mortgagee cannot be required to divide either his debt or his security."

Springer is contrary to the Atwells' assertion. That was a suit between a senior encumbrancer (Kirkeby) and a junior lienor (Springer). Springer Corporation, which had been inadvertently omitted as a party in a prior foreclosure action brought by Kirkeby, held a mortgage on only a portion of the land encumbered to Kirkeby. It claimed, as the Atwells do here, that it should be allowed to redeem pro tanto as to the portion of the land in which it had a security interest. The claim was denied. Although Springer, as a lienholder of a portion of the encumbered property, occupied a different legal position than the Atwells, who are owners of the legal title to a portion of the encumbered property, the relief sought is identical and the result we reach is the same.

We find nothing in our redemption statute which dictates a different result. See, § 24–2–19, N.M.S.A.1953 (Supp.1973).

Finally, the Atwells contest the trial court's refusal to apply marshalling or the Doctrine of Inverse Order of Alienation to the foreclosure sale.

The factual background upon which this issue must be decided is rather sparse. The claims of defendants, other than the Atwells, have been set at rest by settlement with Seasons.

The court found that:

> "At the time this suit was instituted, Lincoln Hills, Inc., still owned an unknown number of lots in Lincoln Hills Country Club Subdivision and after the notice of Lis Pendens was filed deeded them to Hope Oil, Inc."

The court concluded that the doctrines asserted by the Atwells "are not applicable to this case."

■ Marshalling is an equitable principle under which assets of a debtor are arranged to protect the rights of two or more competing creditors. It is also referred to as the two-funds doctrine and is often applied in situations where one creditor has a claim to two or more funds, and another has a claim upon one of the funds only, the one having a claim upon two funds being required to look first to the fund to which he has the exclusive right. Its purpose is to protect junior lienholders. See American National Ins. Co. v. Vine-Wood Realty Co., 414 Pa. 263, 199 A.2d 449 (1964); Bank of Bentonville v. Swift & Company, 233 Ark. 808, 348 S.W.2d 881 (1961). As was stated in the Springer Corporation case, supra, Springer's real relief:

> " * * * [lay] in invoking the rule of marshalling by which the junior encumbrancer may require a senior mortgagee to exhaust his remedy against property other than that covered by the partial mortgage of the junior encumbrancer." 80 N.M. at 209, 453 P.2d at 379.

■ In this case, we don't have "two funds" to which marshalling might apply. Nor do we have any competing creditors. There is only Seasons. The court did not err in declining to apply the Doctrine of Marshalling.

Finally, we must consider whether to apply the Doctrine of Inverse Order of Alienation. That rule has been stated as follows:

"Whenever the mortgagor has conveyed separate parcels of the mortgaged premises by warranty deeds to successive grantees, and there are no special provisions in any of their deeds, and no other dealings between themselves or with the mortgagor which disturb the equities otherwise existing, a priority results, depending upon the order of conveyance. As between the mortgagor and all the grantees, the parcel in his hands, if any, is primarily liable for the whole mortgage debt, and should be exhausted before having recourse to any of theirs; as between the grantees, their parcels are liable in the inverse order of their alienation, and any parcel chargeable first in order must be exhausted before recourse is had to the second."

4 Pomeroy's Equity Jurisprudence § 1224, at 668, 669 (5th-ed. 1941). See also 53 Am.Jur.2d Marshaling Assets § 44 (1970); Annot. 131 A.L.R. 4 (1941).

The doctrine is not recognized in all jurisdictions and, where it is utilized, it is not always applied in its entirety. Modifications in its application are fashioned according to its general purposes and precepts to fit particular fact situations. See Annot. 131 A.L.R. 4 (1941). New Mexico has had no occasion to consider the doctrine.

We have mentioned the paucity of facts which bear upon the application of the doctrine here. We do not know the circumstances of any owner of title to a lot sold by Lincoln Hills subject to the mortgage. The evidence of times of conveyances, prices, worth, improvements and so on was not presented to the trial court. No issues were tendered by the pleadings among the various defendants by which the equities of their respective situations could be gauged. In fact, all of the defendant owners of encumbered lots, other than the Atwells, have apparently settled.

We are not moved to adopt the Rule of Inverse Order of Alienation in a case where we have no means of weighing the equities for or against those whose rights would be affected by our action. Nevertheless, we think one fact found by the trial court to be compelling. At the time this foreclosure action was filed, Lincoln Hills, the mortgagor, still held legal title to some of the encumbered land.

It appears from the precedents and authorities dealing with the Rule of Inverse Order of Alienation that whether jurisdictions have adopted the rule in its entirety or with some modifications, they are virtually unanimous in holding that where a mortgagor conveys a portion and retains a portion of the encumbered property, the property so retained should first be subjected to the payment of the debt before resorting to the portion conveyed. This is on the salutory principle that one man's property should not be subjected to the payment of another man's debt. As stated in Annot. 131 A.L.R. 4 at 11:

"According to the unanimous concensus of opinion of the courts, based upon the basic idea of equity that one man's debt cannot be required to be paid with the property of another, where the owner of the property which is covered by the prior paramount lien, whether created by himself or by a prior owner, conveys or encumbers a part of such property, retaining the other part or some interest therein, the part or interest so retained will first be subjected to the payment of the paramount encumbrance before the part conveyed or aliened can be reached in the hands of the purchaser or encumbrancer, the assumption being that, in the absence of anything in the con-

veyance showing that the parties intended that the parcel aliened or encumbered should bear its burden of the paramount lien, such owner intended that his debt or the debt secured by his property should be paid out of his own property and not out of the property he aliened— this assumption being strengthened by the presence in the instrument of conveyance or encumbrance of covenants of warranty or convenants against encumbrances   *   *   * ."

The conveyance by Lincoln Hills to the Atwells was, incidentally, by warranty deed.

It seems clear to us this procedure should have been followed here. In Speckner v. Riebold, 86 N.M. 275, 523 P.2d 10 (1974) we recognized the existence of discretionary powers in the trial courts:

"* * * to order such a sale on any terms or in any manner, subject only to statutory prohibitions and review for abuse of discretion."

 By nothing which we say here do we mean to retreat from this statement. However, based on the foregoing legal principles, we must conclude the trial court abused its discretion, but only in fixing and arranging the manner and terms of sale. Our ruling does not pertain to the portion of the judgment foreclosing the mortgage and declaring the rights of the parties.

The judgment of the district court insofar as it specifies the manner, terms and conditions of sale is reversed. The trial court is directed to set that portion of the judgment aside, and to determine the extent and amount of the encumbered property to which Lincoln Hills held title at the time this foreclosure action was filed, making appropriate findings of fact in this respect. Such properties so owned by Lincoln Hills shall be first sold and the proceeds applied upon the indebtedness owing to Seasons. Only if the proceeds of the first sale are insufficient to pay the debt, interest, costs and attorneys' fees owing

may the property of the Atwells be subjected to the payment of the balance of the indebtedness.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.