753 P.2d 353

Reyes R. PADILLA and Senaida L. Padilla, his wife, Plaintiffs–Appellants,

v.

CITY OF SANTA FE,
Defendant–Appellee.

No. 8263.

Court of Appeals of New Mexico.

March 22, 1988.

Ruben Rodriguez, Santa Fe, for plaintiffs-appellants.

James C. McKay, City Atty., Santa Fe, for defendant-appellee.

## OPINION

MINZNER, Judge.

Plaintiffs appeal the trial court's decision, in a suit to quiet title, denying their claims to a lot that lies above Alameda Street in Santa Fe (the disputed tract) and granting defendant's counterclaim to quiet title. Plaintiffs contend that the trial court erred in construing the description of a larger parcel from which the disputed tract was conveyed, because the trial court (1) added words to the description and (2) failed to apply relevant rules of construction. Plaintiffs also contend (3) there is insufficient evidence to support the dispositive findings and conclusions; (4) the trial court erred in refusing to adopt requested findings and conclusions; (5) defendant failed to meet its burden of proof as to the

counterclaim; and (6) the trial court erred in denying their claim based on adverse possession. We reverse on the ground the trial court erred in construing the description; as a result, there is insufficient evidence to support the challenged findings and conclusions. In view of our disposition, we do not reach the other issues raised on appeal.

This appeal comes before the court for decision after it was submitted to an advisory committee pursuant to an experimental plan. *See Patterson v. Environmental Improvement Div.*, 105 N.M. 320, 731 P.2d 1364 (Ct.App.1986). We acknowledge the aid of attorneys Charles W. Durrett, S. Thomas Overstreet, and Thomas A. Sandenaw, who devoted both time and effort. We express our gratitude for their voluntary service.

BACKGROUND.

Plaintiffs introduced their abstract of title, claiming it proved record title or, alternatively, that it established sufficient color of title to sustain their claim to the disputed tract by adverse possession. Defendant did not challenge the validity of any of the deeds in the abstract but only the location of the northern boundary of the larger parcel, conveyed in 1930 from Modesto Ulibarri to Isabelita Tapia. Plaintiffs contend that parcel included the land they now claim.

In the deed from Ulibarri to Tapia, the land is described as bounded on the south by the Santa Fe River, on the east and west by named adjoining landowners, and on the north by "the hills." It is undisputed that this deed was in Spanish, and that the Spanish term used for "the hills" was "las lomas." No measurements of the property are given in the deed.

Tapia and Demecia M. Gallegos subsequently conveyed property to Filomeno Montano. It is not clear from the record when and how Gallegos acquired her interest. Although there is a deed in plaintiffs' abstract from Tapia to Gallegos, it was conceded at trial that it is not in plaintiffs' chain of title. The trial court found that Tapia conveyed to Montano "a portion of the property" she had received from Ulibarri.

The deed to Montano describes the property as situated in precinct 17 of the City of Santa Fe and bounded by the same natural monuments, although by different adjoining property owners. It additionally describes the property as 266 yards[1] in length "from the hill of Alameda Street."

In 1942, Montano conveyed a parcel of land situated in precinct 17 to Rosendo and Nestora Romero. Their deed describes the land conveyed as bounded on the east and west by the same adjoining property owners named in the deed to Montano and bounded on the north by the hills, but bounded on the south by Alameda Street. The property is further described as 180 feet in depth.

Upon Rosendo's death, Nestora, on behalf of the estate, executed a warranty deed for that property to herself as heir. That deed, executed in 1974, contains precisely the same description of the property as the deed to the Romeros. In 1977, Nestora conveyed the parcel, still described precisely as it was in the deed conveying it to the Romeros, to plaintiffs.

Defendant contended at trial that Nestora Romero did not own the disputed tract. Defendant argued that the conveyance of land from Ulibarri to Tapia, described as "bounded on the north by the hills," included only land to the "toe of the hills," and that the "toe of the hills" was located at Alameda Street. Therefore, defendant concluded, neither Tapia nor Montano owned the disputed tract, which lies on the side of the hill above Alameda Street, and thus neither one could convey it to the Romeros.

Plaintiffs introduced a map referred to in the record as the "1901 White's Map." The White's Map was copied from another map, the Zimmerman map. Mr. Rivera described the Zimmerman map as done for tax purposes, to indicate which lands were owned by defendant, which were privately owned, and how much acreage was under

---

1. The free translation of the deed from the Spanish that was introduced into evidence actually says "266 years," but it was generally agreed at trial that the proper word was "yards."

cultivation. He said it was not surveyed on the ground and its accuracy should be checked.

The White's Map contains certain symbols. There is no explanatory key on the map to explain what was meant by the symbols. The symbols do not appear on the original Zimmerman map; they were added when that map was copied. Mr. Stutzman, defendant's surveyor, testified that these symbols represent "the toe of the hills."

The trial court found that in 1937 or 1938, Alameda Street was extended into and through the subject property, then owned by Tapia. The trial court also found:

4. In 1901, as evidenced by the 1901 White's Map, the subject property was owned by Modesto Ulibarri. The map indicates the south as bounded by the Santa Fe River and the north bounded by the hills, shown on the map by marks just north of the boundary line. The distance of the property, north to south, is shown as 750'.

\* \* \* \* \* \*

9. In 1948, Walter Turley published a survey of the area which showed the original Filomeno Montano tract as bisected by Alameda Street. The southern tract is bounded by the Santa Fe River on the south and by Alameda Street on the north. The northern or Romero tract (C–1) is shown as bounded on the south by Alameda Steet [sic]. C–1 extends 172.9' from Alameda Street north along its eastern boundary.

10. Alameda Street, at that time, measured 51.9' in width.

11. Including Alameda Street, the original Filomeno Montano tract (including tracts C–1 and C–2) measure 1236.7' or slightly less than 500' longer than the same tract shown in the 1901 White's Map or as measured in the 1940 deed to Montano.

\* \* \* \* \* \*

16. Since 1901, the subject property appears to have increased its length, north to south, by nearly 500' so as to extend north beyond Alameda Street.

17. After a view of the property by the court, the court found that the line of small hills north of the river converge upon Alameda Street. In other words, the Street runs along the foot of the hills.

18. At that point, the grade becomes too steep to be valuable for agricultural purposes and was so depicted on the 1901 White's Map which was a map made for tax purposes.

Plaintiffs challenge finding no. 16.

The trial court concluded:

5. Where the deeds speak of "the hills" or the "hill of Alameda Street," they mean the foot or toe of the hills.

6. When these descriptions were made, the land had value for agricultural purposes so that it was the gentler slopes which were useful.

7. Hence, it was the foot or toe of the hills which formed the natural boundary for land principally used for agricultural purposes.

8. The hills which form the northern boundary of the subject property and Alameda Street converge or coincide so that the boundary is one and the same.

9. It follows that the true northern boundary of the subject property is Alameda Street.

10. Insofar as the Padillas claim title to property north of Alameda Street, their claim is not supported by the evidence.

11. Insofar as the City of Santa Fe claims title to property north of Alameda Street, their claim is well-founded and should be granted.

Plaintiffs challenge conclusions nos. 5, 8, 9, 10, and 11.

DISCUSSION.

On appeal, the reviewing court is bound by the trial court's findings of fact unless they are demonstrated to be clearly erroneous or not supported by substantial evidence. *Roybal v. Morris*, 100 N.M. 305, 669 P.2d 1100 (Ct.App.1983). However, where an issue to be determined rests upon

the interpretation of documentary evidence, an appellate court is in as good a position as the trial court to determine the facts and draw its own conclusions. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 678 P.2d 1170 (1984). The appellate court is not bound by the trial court's conclusions of law. *Roybal v. Morris.*

The trial court in effect found that both the deed from Ulibarri to Tapia and the deed from Tapia to Montano refer to the same natural monument in describing the northern boundary of the land conveyed. No one has challenged this determination, and we accept it as binding on appeal.

Where there is a studied repetition of the words "the hills" in a series of deeds, the phrase is not too vague to establish a conveyance. *Cordova v. Town of Atrisco*, 53 N.M. 76, 201 P.2d 996 (1949). The difficulty in this case is whether it is possible to identify the point to which Ulibarri intended to refer. *See id.*

■ Ordinarily, when a natural object is used as a boundary, the middle of the object named constitutes the line, except in the case of a range of mountains, when it goes to the comb or dividing line of the ridge. *Gentile v. Crossan*, 7 N.M. 589, 38 P. 247 (1894). However, "[t]he use of the term 'las lomas' [the hills] * * * constitute[s] a latent ambiguity, and [is] subject to explanation by parol * * * In explaining such ambiguity, it is a proper rule to consider all the circumstances attending the parties at the date of the transaction." *Id.* at 597–8, 38 P. at 249. That court noted that "it is a matter of common experience, of which the court will take notice, that, in the progress of the settlement of a country, particular localities will come to be designated by the use of a term otherwise general in its common acceptation." *Id.* at 596, 38 P. at 249.[2]

■ Plaintiffs do not claim title to the crest of the hill, but only to a point approximately halfway up the hill. If Ulibarri intended the words "the hills" to mean the "toe of the hills," then plaintiffs' quiet title action must fail. If, instead, "the hills" describes a boundary at the crest of the first hill above Alameda Street, or otherwise sufficiently beyond the "toe of the hill," plaintiffs' claim is valid. There has been no other challenge to their claim of record title.

The trial court concluded that the call to "the hills" meant the "foot" or "toe of the hills." It based that conclusion in part on documentary evidence as to the original dimensions of the larger parcel. The record indicates the trial court identified a difference between the north-south measurement indicated by the Turley survey and that shown on the White's Map. Relying on that evidence, as well as the stated north-south measurement in Tapia's deed to Montano, the trial court found that the larger parcel did not extend beyond Alameda Street, and it concluded that the "toe of the hills" was intended as the boundary. In our view, the documentary evidence does not support the finding. *See City of Raton ·v. Vermejo Conservancy Dist.* Rather, that evidence supports plaintiffs' claim. *Id.* Thus, the challenged conclusions cannot stand.

The description in a deed must be certain or capable of being reduced to certainty by something extrinsic to which the deed refers. *Komadina v. Edmondson*, 81 N.M. 467, 468 P.2d 632 (1970). Where the description is uncertain, extrinsic evidence may be used to ascertain the intent of the grantor. *Garcia v. Garcia*, 86 N.M. 503, 525 P.2d 863 (1974). It is sufficient, for example, if the deed refers to another instrument or document. *Hughes v. Meem*, 70 N.M. 122, 371 P.2d 235 (1962).

■ The purpose of admitting extrinsic evidence with respect to the description in a deed is to explain an ambiguity or to locate the property conveyed on the ground. A court may not, in effect, reform a deed when attempting to interpret or construe it. *See Walters v. Tucker*, 281 S.W.2d 843 (Mo.1955). The trial court in effect altered

---

2. Upon retrial, a special master determined that the boundary described in the deed at issue as "las lomas" in fact extended to the crest of the

hills. *Gentile v. Kennedy*, 8 N.M. 347, 45 P. 879 (1896).

the description in the Ulibarri deed, rather than interpreting it, because it relied on the White's Map to establish a call for distance in that deed. This was an impermissible use of extrinsic evidence. *Komadina v. Edmondson; Walters v. Tucker.*

In addition, the evidence showed that the 266 yards stated in Tapia's deed to Montano was not an accurate measure of the distance from the river to where the hills began. Mr. Stutzman estimated that the distance from the river to the street, where the hills begin, was approximately 1000 feet (333 yards).

■ Ordinarily, in the case of a conflict between a call for distance and the call to a natural monument as a boundary, the call to the monument controls. *See Cordova v. Town of Atrisco.* The rule is based on a preference for the more certain call. *Id.* On these facts, the trial court erred in preferring a call for distance over the call "to the hills."

■ The dispositive appellate issue in this case is whether there was any evidence that the call "to the hills" was used differently in this particular locality. *See Gentile v. Crossan.* "[T]he words of a document are never anything but indices to extrinsic things * * * *all the circumstances must be considered which go to make clear the sense of the words*—that is, their associations with things." IX J. Wigmore, *Evidence* § 2470 at 237 (Chadbourn rev. 1981) (emphasis in original). If it was not used in an unusual way in this particular locality, under the relevant rule of construction, the intended boundary was beyond Alameda Street and included the disputed tract. *Gentile v. Crossan.*

> The search is for the sense of a word or phrase as used and the object is therefore to find the standard actually employed by the party. * * * [A]s a member of the community [the party] presumably uses words in the normal sense of the community; this standard will therefore be prima facie accepted. But if it appears that as a resident of a special village he used the sense of that village, then this local standard may be substituted for the other. * * * The single condi-

tion is that before the standard prima facie applicable can be replaced, *it must be made to appear probable that the party was actually using the other standard.*

IX J. Wigmore, *Evidence* § 2460(1) at 191 (Chadbourn rev.1981) (emphasis in original).

The evidence defendant presented at trial did not indicate that a call to "the hills" in this locality probably meant "the toe of the hills." *Cf. Tietzel v. Southwestern Constr. Co.,* 48 N.M. 567, 154 P.2d 238 (1944) (evidence of experience in surveying and running out lines under old Spanish deeds in the Rio Grande Valley and conversation with local residents relied on by trial court to support a finding that, by local custom, a call to the foothills meant to the bottom of the foothills).

Mr. Stutzman testified that, in his experience surveying north of Espanola, boundaries were located above the acequia and far enough up the slope of a hill to allow houses, barns, etc. to be built without wasting any valuable arable land. He believed the same pattern would have been followed in this area, but he could not say where the boundaries would have been located on this hill, because he did not know where the acequia was located or even if there had been one. Thus, this evidence does not establish a local standard for the area in question.

■ Mr. Stutzman also testified that the symbols on the White's Map represented the "toe of the hills." He reasoned that, since the road was shown going between the hill symbols, that the road went up an arroyo and therefore the hill symbols meant the "toe" of the hills. *Cf. Tietzel v. Southwestern Constr. Co.* However, none of the deeds in plaintiffs' abstract refer to the White's Map. Thus, this testimony was not competent as to the meaning of the phrase "to the hills." *Komadina v. Edmondson; Four Hills Country Club v. Bernalillo County Property Tax Protest Bd.,* 94 N.M. 709, 616 P.2d 422 (Ct.App. 1979).

■ Rules of construction are aids used in determining a grantor's intent when a deed is ambiguous. *Atlantic Ref. Co. v. Beach*, 78 N.M. 634, 436 P.2d 107 (1968). On the record before us, it is necessary to apply rules of construction to determine Ulibarri's intent. Thus, we agree with plaintiffs that the trial court erred in failing to apply the rule of construction that a call to a monument controls over a call to distance, *Cordova v. Town of Atrisco*, and that the middle of the object named constitutes the line. *Gentile v. Crossan*. Under the relevant rules of construction, the trial court should have concluded that the larger parcel conveyed by Ulibarri extended north of Alameda Street and included the disputed tract. That tract was included in Tapia's conveyance to Montano because the trial court determined both deeds referred to the same natural monument as the northern boundary.

CONCLUSION.

There being no other issue with respect to plaintiffs' claim to the disputed tract, the judgment entered in favor of defendant must be reversed, and the case remanded for entry of judgment in favor of plaintiffs. Although plaintiffs requested oral argument, it is the opinion of this court that oral argument is not necessary. *See Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977). Plaintiffs shall recover their appellate costs.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.