1999-NMCA-044

975 P.2d 379

**Bob G. SELBY and Margaret L. Selby, Plaintiffs–Appellants,**

v.

**James A. ROGGOW, Individually, and Cresswell & Roggow, P.A., Defendants–Appellees,**

No. 18749.

Court of Appeals of New Mexico.

Jan. 26, 1999.

Ramon Acosta, Las Cruces, for Appellants.

John M. Brant, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellees.

## OPINION

DONNELLY, Judge.

{1} In this legal malpractice case, Plaintiffs appeal the granting of summary judgment in favor of Defendants. The central issue asserted on appeal is whether the trial court erred in determining as a matter of law that none of the facts relied upon by Plaintiffs would have provided a basis to avoid a mortgage foreclosure or have supported a viable counterclaim in the foreclosure action brought against them, wherein Defendants were employed as defense counsel. We hold that the granting of summary judgment was proper.

*FACTS*

{2} Plaintiffs, real estate developers, filed suit against Defendants James Roggow (an attorney) and Cresswell & Roggow, P.A. (the law firm) for malpractice. Plaintiffs contend that they had hired Defendants to defend them in a mortgage foreclosure action brought by Citizens Bank of Las Cruces (the Bank) relating to a subdivision (Valley Gardens) being developed by them. The Bank prevailed in the foreclosure action and ultimately obtained a deficiency judgment against Plaintiffs.

{3} Plaintiffs contend that Defendants committed malpractice by failing to raise several compulsory counterclaims which, if filed, would have resulted in Plaintiffs prevailing in the foreclosure action. Specifically, Plaintiffs claim that Defendants should have filed the following counterclaims: (1) the Bank breached an oral agreement to provide construction loans for houses to be built and sold on speculation; (2) the legal description in the mortgage was erroneous in that it contained an inaccurate metes and bounds description rather than a lot and block description, and thus was unenforceable; (3) the Bank breached a covenant of good faith and fair dealing; and (4) the Bank committed a prima facie tort. After discovery, Defendants filed a motion for summary judgment. Following a hearing on the motion for summary judgment, the trial court granted the motion.

## DISCUSSION

{4} "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). The trial court found that there were no genuine issues of material fact and that Defendants were entitled to judgment as a matter of law. We agree.

### A. Did Plaintiffs Controvert All Material Facts?

{5} Defendants, in their motion for summary judgment, stated the following as being an undisputed material fact:

9. Selby told Roggow only that he understood that there would be a "six month roll until it sells . . . if not specifically said, then impliedly." *See* Roggow note, attached hereto as Exhibit G. Selby never told Roggow about the alleged promise to make loans to build "spec" houses. Roggow deposition, attached hereto as Exhibit H. On the basis of this information that Selby gave Roggow at the beginning of the representation, Roggow determined in the exercise of his judgment on behalf of his

client that there was no basis for a lender liability counterclaim against Citizens Bank. Exhibit H.

{6} In response to Defendants' motion, Plaintiffs filed two documents, one on May 2, 1997, and one on May 12, 1997. The May 2, 1997, document lists four issues of material fact, which Plaintiffs contend are in dispute: (1) whether an implied contract between the Bank and Plaintiffs to build "spec" houses existed; (2) whether the Bank had sufficient justification to foreclose on the property, even though they may have had a legal right to do so; (3) whether the erroneous legal description contained in the mortgage voided the mortgage; and (4) whether Defendants failed to exercise that standard of care required by competent attorneys by failing to timely and appropriately assert counterclaims on behalf of Plaintiffs. The pleading filed May 12, 1997, asserted that: (1) Defendants failed to assert a counterclaim when they recognized that the mortgage was unenforceable; (2) the Bank breached its contract with Plaintiffs when it failed to fund any construction loans; (3) there was a viable counterclaim for promissory estoppel; and (4) there was a viable counterclaim for prima facie tort.

{7} A review of the May 2nd and May 12th documents reveals that Plaintiffs, while alleging that the Bank breached an implied contract to furnish funding to Plaintiffs for "spec" homes, did not controvert Defendants' claims that during the time they acted as Plaintiffs' counsel they were unaware of any implied agreement.[1] Rule 1–056(D)(2) NMRA 1997 establishes very specific procedures that must be adhered to by both the moving party and the responding party in summary judgment proceedings. The rule requires that the moving party state with particularity the material facts it contends are not in dispute. The moving party must number these facts and must list all references in the record which it asserts support such contentions. The party opposing summary judgment must then specifically state all material facts "to which [it] contends a

---

1. The trial court did not specifically rule on the issue of whether the Bank breached a covenant of good faith, and Plaintiffs have failed to argue

this issue in their brief-in-chief. Thus we find such issue was waived. *See State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.1985).

genuine issue does exist." Rule 1–056(D)(2). In addition, the rule requires that

[e]ach fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the moving party's fact that is disputed. All material facts set forth in the statement of the moving party shall be deemed admitted unless *specifically controverted.*

Rule 1–056(D)(2) (emphasis added).

{8} Our Supreme Court in *Richardson v. Glass,* 114 N.M. 119, 121–22, 835 P.2d 835, 837–38 (1992), held that the parties must follow the specific procedural requirements established in Rule 1–056(D)(2). Plaintiffs' response to the motion and their supporting memorandum do not controvert any facts in the manner required by Rule 1–056(D)(2). The Rule provides that the material facts set forth by the moving party "shall be deemed admitted unless specifically controverted." *Id.* Because Plaintiffs did not challenge Defendants' material Fact No. 9, we accept as true Defendants' claim that they were never informed that the Bank had made any oral promises to fund construction loans. Whether the Bank actually made oral promises that it did not fulfill (breach of contract), or whether Plaintiffs relied upon these oral promises in deciding to mortgage the property with the Bank (promissory estoppel), is not relevant to our inquiry. Thus, if Defendants were not apprised of these oral promises, they could not have been negligent in failing to raise counterclaims based on these oral promises.

■ {9} Subsequent to the trial court's award of summary judgment, Plaintiffs filed a motion for rehearing alleging that there existed issues of material fact. Plaintiffs contended that Defendants had knowledge of the Bank's alleged oral promises to fund construction loans. Attached to the motion for rehearing are excerpts from the depositions of Plaintiffs and Defendants which Plaintiffs contend supports their claim that Defendants had knowledge of the alleged oral promises by the Bank. Prior to the hearing on the motion for rehearing, Plaintiffs filed a notice of appeal. The trial court denied the motion for rehearing on two grounds: (1) more than thirty days had passed since the filing of the motion and thus the motion was deemed denied by operation of law pursuant to NMSA 1978, § 39–1–1 (1917), and (2) filing of the notice of appeal divested the trial court of jurisdiction. An amended notice of appeal was filed subsequent to the entry of the order denying rehearing.

■ {10} When attachments to the motion for rehearing are properly before this Court for review, we will consider the documents in determining whether Plaintiffs have controverted Defendants' claim. For example, in *In re Estate of Keeney,* 121 N.M. 58, 60, 908 P.2d 751, 753 (Ct.App.1995), we held that we could consider de novo affidavits submitted along with a motion for reconsideration of summary judgment. "if the trial court does consider the new material and still grants summary judgment, 'the appellate court may review all of the materials *de novo.*'" *Id.* at 61, 908 P.2d at 754 (quoting *Fields v. City of S. Houston, Texas,* 922 F.2d 1183, 1188 (5th Cir.1991)). Conversely, however, if the trial court did not consider the additional information, the reviewing court will generally decline to review such matters as not properly before it. *See Schmidt v. St. Joseph's Hosp.,* 105 N.M. 681, 684–85, 736 P.2d 135, 138–39 (Ct.App.1987); *see also Estate of Keeney,* 121 N.M. at 60, 908 P.2d at 753 ("Because the trial court in *Schmidt* did not consider the affidavits when making its determination as to summary judgment, this Court could not review them as they were not among the affidavits upon which the trial court's decision was based."). With these rules in mind, we must then determine whether the trial court considered this additional information in order to decide whether it is appropriate for us to review the information.

{11} There has been no showing that the trial court in any way relied upon or considered the additional information. The motion for rehearing was denied because the court did not act on the motion within thirty days of filing, *see* Section 39–1–1, and because the notice of appeal was filed prior to the court ruling on the motion. *See Wagner Land & Inv. Co. v. Halderman,* 83 N.M. 628, 630, 495

P.2d 1075, 1077 (1972) (filing of notice of appeal divests trial court of jurisdiction). The trial court did not rule on the merits of Plaintiffs' motion for rehearing. Therefore, we conclude that its grant of summary judgment was not based upon the additional information contained in the subsequent motion, but rather its decision was based upon the original motion and the response thereto. We therefore decline to review the additional information Plaintiffs appended to their motion for rehearing. Plaintiffs failed in their original response to controvert Defendants' claimed undisputed material fact that they were unaware of any alleged oral contract between Plaintiffs and the Bank to provide financing for homes sought to be built for speculative sale. Therefore, we determine that summary judgment on this issue was appropriate.

### B. *Claim of Error in the Legal Description*

{12} Plaintiffs, prior to entering into a relationship with the Bank, had previously financed the property with Western Bank. When Plaintiffs initially took out the loan with Western Bank, the property consisted of two tracts, Units I and II. The legal description of the property contained in the mortgage with Western Bank was a metes and bounds description that included all of Units I and II. Unit I was subdivided into lots and those lots were subsequently sold to individual homeowners. Plaintiffs subsequently subdivided Unit II into lots and blocks. A portion of Unit II was also platted and dedicated for public roads and a public park.

{13} In 1988 Western Bank advised Plaintiffs it would not renew the mortgage it held on the property. Plaintiffs were therefore forced to seek new financing. Citizens Bank agreed to finance the property and pay off the Western Bank loan. A mortgage, note, and various other documents were prepared and filed memorializing the agreement of the parties. The new mortgage contained the same metes and bounds description as the Western Bank mortgage, even though the property had been subdivided and some of the lots in question had been previously sold to third parties. Both the note and the loan worksheet prepared by the Bank describe the property securing the note as "REM [real estate mortgage]—51 LOTS, VALLEY GARDENS SUBDIVISION. LOT 1 BLOCK 3 IMPROVED HOUSE." When Plaintiffs defaulted on the loan, Citizens Bank initiated foreclosure proceedings. In the original foreclosure complaint, Citizens Bank relied upon the metes and bounds description of the property.

{14} There is no dispute that this description was inaccurate and described more property than the security interest actually possessed by the Bank. Defendants, in the course of their representation of Plaintiffs in the foreclosure action, negotiated with the Bank to ensure that any foreclosure judgment entered accurately described the property. The Bank then amended its complaint to reflect such agreement. Subsequently the Bank was granted summary judgment in the foreclosure action and it foreclosed upon the property.

{15} Plaintiffs argue that Defendants, rather than negotiating with the Bank to ensure that the Bank did not foreclose upon more property than the Bank actually had an interest in, should have filed a counterclaim alleging that the mortgage was invalid due to the erroneous legal description. In support of this argument, Plaintiffs principally rely upon *Seasons, Inc. v. Atwell,* 86 N.M. 751, 527 P.2d 792 (1974), *Grammer v. New Mexico Credit Corp.,* 62 N.M. 243, 308 P.2d 573 (1957), and *Security State Bank v. Clovis Mill & Elevator Co.,* 41 N.M. 341, 68 P.2d 918 (1937). We do not find these cases to support Plaintiffs' argument that an erroneous legal description invalidated the mortgage so as to render it unenforceable.

{16} *Security State Bank* concerned a chattel mortgage on grain. A farmer who had mortgaged his crop with Security State Bank sold the crop to Clovis Mill and Elevator Company. The description of the crop to be mortgaged was not fully accurate. Nevertheless, the trial court held that Clovis Mill and Elevator Company had constructive notice of the mortgage which had been filed with the county clerk and did convert the

grain. The Supreme Court, in upholding the trial court, stated:

> The rule is that a description in the mortgage which, aided by such inquiries as a reasonably prudent man would make under the circumstances and which the mortgage itself indicates, will lead a third person to the information, is sufficient. The description of the crop was not so indefinite as to invalidate the chattel mortgage.

*Security State Bank,* 41 N.M. at 344, 68 P.2d at 920 (citations omitted). Contrary to the plaintiffs' contentions, the Court did not hold that an erroneous description necessarily invalidated the mortgage.

{17} Similarly, neither *Seasons, Inc.* nor *Grammer* lend any support to Plaintiffs' arguments. *Seasons, Inc.* did not determine whether the mortgage in question was in fact valid or invalid, but instead held only that the validity of the mortgage was, in effect, an affirmative defense and should therefore have been raised at trial. *See id.,* 86 N.M. at 753, 527 P.2d at 794. *Grammer* involved an exception contained in a deed and whether that exception was sufficient to accurately describe the property sought to be excluded. The *Grammer* Court stated that "[t]he general rule is that an exception in a deed of conveyance must contain an identifying description of the land excepted, yet such requirement is satisfied if the language of the exception provides information, which when supplemented by competent extrinsic evidence, satisfactorily identifies the excepted parcel." *Grammer,* 62 N.M. at 247, 308 P.2d at 575.

{18} Thus, we think it clear that an inaccurate description in a deed or a mortgage does not automatically serve to invalidate an instrument. In *Hughes v. Meem,* 70 N.M. 122, 125, 371 P.2d 235, 238 (1962), our Supreme Court held:

> "[I]t may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located."

(Quoting 16 Am.Jur. *Deeds* § 262 (1938).) This general principle has been cited with approval in a series of cases. *Accord Richardson v. Duggar,* 86 N.M. 494, 497, 525 P.2d 854, 857 (1974); *Rhodes v. Wilkins,* 83 N.M. 782, 784, 498 P.2d 311, 313 (1972); *Marquez v. Padilla,* 77 N.M. 620, 625, 426 P.2d 593, 596–97 (1967); *Padilla v. City of Santa Fe,* 107 N.M. 107, 110, 753 P.2d 353, 356 (Ct.App. 1988); *Blumenthal v. Concrete Constructors Co.,* 102 N.M. 125, 129–30, 692 P.2d 50, 54–55 (Ct.App.1984).

{19} Similarly, in *Komadina v. Edmondson,* 81 N.M. 467, 469, 468 P.2d 632, 634 (1970), the Supreme Court noted that "[i]t is presumed that the grantor in a deed of conveyance intended to convey something and the deed will be upheld unless the description is so vague or contradictory that it cannot be ascertained what land in particular is meant to be conveyed." The Court in *Kuntsman v. Guaranteed Equities, Inc.,* 105 N.M. 49, 50, 728 P.2d 459, 460 (1986), indicated that a mortgage is considered a conveyance of an interest in real estate. Thus, we presume that the mortgagor intended to give a mortgage and a court will uphold the validity of a mortgage as long as the description set forth therein is not so vague or contradictory as to be unascertainable.

{20} Here, the property which was intended to be mortgaged was sufficiently described. It was referred to in both the note and in the loan worksheet. This fact is significant because it is well settled that "if a note and mortgage are made at the same time and [relate] to the same subject ..., they will be construed together as if they were parts of the same instrument." *Gonzales v. Tama,* 106 N.M. 737, 738–39, 749 P.2d 1116, 1117–18 (1988); *see also Levenson v. Haynes,* 1997–NMCA–020, ¶ 14, 123 N.M. 106, 934 P.2d 300 (" 'instruments executed at the same time, by the same parties, for the same purpose,' " are deemed one instrument and will be read together (quoting 6 Ruling Case Law, *Contracts* § 240, at 851 (1915))).

{21} Construing the note and the mortgage together, the instruments sufficiently describe the property intended to be mortgaged. The fact that the mortgage contained a broader metes and bounds description did not serve to invalidate the mortgage. Thus, a counterclaim based upon this theory

even if it had been filed, would have failed. The trial court correctly determined that Defendants' failure to raise such a counterclaim in the foreclosure proceeding as a matter of law did not constitute legal malpractice.

### C. *Prima Facie Tort*

{22} Plaintiffs also argue that Defendants should have raised a counterclaim for prima facie tort in the mortgage foreclosure proceeding. In *Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726 (1990), New Mexico first recognized an action for prima facie tort. To constitute a prima facie tort, there must be an intentional, otherwise lawful act, committed with the intent to injure the plaintiff, and which act is found to be without any valid justification. *See Beavers v. Johnson Controls World Servs., Inc.,* 120 N.M. 343, 352, 901 P.2d 761, 770 (Ct.App. 1995).

{23} Plaintiffs contend that prima facie tort liability existed against the Bank because the Bank reneged on its oral promises to fund construction loans, thus forcing Plaintiffs into default on the mortgage. Plaintiffs' prima facie tort claim is dependent upon their assertion that Defendants should have pursued a claim for breach of an implied contract and promissory estoppel. The fallacy in this contention is that Defendants would have to have been aware of the alleged oral promises in order to be aware of a possible prima facie tort claim. However, as discussed above, because the trial court properly accepted as true Defendants' uncontroverted claim that they were unaware of any alleged oral promises while representing Plaintiffs, Defendants would have had no basis for asserting a prima facie tort claim. Thus, it follows that they could not have been negligent in failing to raise such claim.

### CONCLUSION

{24} The trial court's award of summary judgment is affirmed.

{25} IT IS SO ORDERED.

BOSSON and BUSTAMANTE, JJ., concur.

