**In re BOSWELL LAND AND LIVESTOCK, INC., Debtor.**

**In re William G. BOSWELL and Mary Lee Boswell, Debtors.**

**ELTON, INC., a Utah corporation, Plaintiff,**

v.

**UNITED STATES of America, FARMERS HOME ADMINISTRATION, et al., Defendant.**

Nos. 82C–0991, 82C–1991.
Adv. No. 85 PC 0777.
No. 87–C–0270S.

United States District Court,
D. Utah, C.D.

April 14, 1988.

Richard D. Burbidge, Stephen B. Mitchell, Burbidge & Mitchell, Salt Lake City, Utah, for plaintiff.

Kathleen Barrett, Asst. U.S. Atty., Salt Lake City, Utah, for Federal respondent.

Stanley R. Smith, Wootton, Smith & Associates, American Fork, Utah, for debtors.

Kenneth A. Rushton, trustee.

## MEMORANDUM DECISION

SAM, District Judge.

This action is before the court on appeal from the bankruptcy court's order granting the appellant's motion for summary judgment regarding the application of the doctrine of inverse order of alienation to the determination of the order of sale of five parcels of real property. Elton, Inc. (Elton) appears on brief as the appellant. The United States of America; Farmers Home Administration (FHA); E. Lee Hawkes, in his capacity as Utah State Director of FHA; Boswell Land & Livestock, Inc.; William G. Boswell; Mary Lee Boswell and Kenneth Rushton, Trustee, appear on brief as the appellees.

### I. *Historical facts*

On March 23, 1976, Boswell Land obtained a loan from Zions First National Bank in the sum of $120,000, which was secured by a trust deed encumbering five parcels of land located in Goshen, Utah. One year later, Elton purchased Parcel 1 and other Boswell Land property not encumbered in the trust deed for $389,000. The Earnest Money Receipt involved in the transaction provided: "All ... mortgages ... and other liens, encumbrances or charges against the property of any nature shall be paid by the seller, except: no exceptions." It also contained the handwritten notation: "Buyer sells subject to—Subject to Exhibit _____ (unreadable)." The parties agree the words "subject to" indicate the parcel was sold subject to Zions' lien. Boswell Land and Elton also signed a Uniform Real Estate Contract (UREC) dated June 1, 1977 that stated Elton would purchase the property for $389,000 payable directly to Boswell Land with a down payment of $15,000 and the balance payable in monthly installments. The UREC also: 1) notified Elton of the Zions obligation, and 2) provided that on completion of the payment schedule, Boswell Land would deliver Elton a warranty deed free and clear of all encumbrances except those mentioned in the UREC.[1] Boswell Land covenanted in the UREC that it would not default in the payment of its obligations against the property. On the same day, Boswell Land placed in escrow for Elton a Warranty Deed conveying all the properties described in the UREC. No liens or encumbrances were mentioned in the deed. Six days later, Elton filed at the County Recorder's Office a Notice of Interest in Real Property.

Elton made all payments to Boswell Land as provided under the contract, and Boswell Land continued to pay Zions to the extent possible. Two years after the purchase, on March 27, 1979, Boswell Land borrowed $100,000 from FHA which was secured with a trust deed encumbering the same five parcels serving as security for the Zions loan. At the time the loan was made, FHA was not aware of Elton's interest in Parcel 1.

Elton alleges that in 1980, it completed payment to Boswell Land of the full $389,000 purchase price. On July 10, 1980, the

---

**1.** The UREC states, in relevant provisions:

6. It is understood that there presently exists an obligation against said property in favor of Zions First National–Spanish Fork Branch with an unpaid balance of $120,000 as of June 1st, 1977.

. . . .

19. The Seller on receiving the payments herein reserved and to be paid at the time and in the manner above mentioned agrees to execute and deliver to the Buyer or assigns, a good and sufficient warranty deed conveying title to the above described premises free and clear of all encumbrances except as herein mentioned and except as may have accrued by or through the acts or neglect of the buyer, and to furnish at his expense, a policy of title insurance in the amount of the purchase price or at the option of the Seller, an abstract brought to date at time of sale or at any time during the term of this agreement, or at time of delivery of deed, at the option of Buyer.

Warranty Deed covering Parcel 1 was released from escrow and recorded. Elton never received notice of the FHA trust deed, and only learned of it two years later when Boswell Land filed bankruptcy. Although FHA received notice of Elton's ownership in Parcel 1, it never directed or requested Elton to pay FHA any payments owing Boswell Land under the UREC.

On August 11, 1982, after Elton had completely purchased Parcel 1, Boswell Land filed for Chapter 11 bankruptcy, listing Parcel 1 as one of the properties it owned. In late 1984, the Trustee of the Boswell Land Bankruptcy estate gave notice he intended to sell Parcels 1 through 5 securing the Zions trust deed, and apply the proceeds toward payment of the Zions' lien. Elton successfully objected to the sale of Parcel 1 on the basis that Boswell Land had no interest in it. The Trustee deleted Parcel 1 from the proposed sale, and scheduled a sale of Parcels 2 through 5 with the proceeds of the sale to be first applied toward payment of the Zions trust deed. FHA purchased an assignment of the Zions trust deed, knowing at the time of purchase about Elton's claim in Parcel 1. Later, FHA obtained a stipulated delay of the Trustee's sale of Parcels 2 through 5. On June 28, 1985, FHA gave notice of a Trustee's sale foreclosing the Zions trust deed pending the foreclosure sale of Parcel 1.

## II. *Procedural facts*

Elton commenced this action in July, 1985, seeking a determination that, under the doctrine of inverse order of alienation, FHA is required to sell Parcels 2 through 5 (still owned by Boswell Land) to satisfy Boswell Land's indebtedness under the Zions trust deed, before selling Parcel 1 which also serves as security for the loan. Elton also sought a determination that the trust deed received by FHA was void as to Parcel 1. In January 1986, the bankruptcy court declared the FHA trust deed void as to Parcel 1 because Boswell Land had no interest in the parcel; however, it denied applicability of the inverse order of alienation. The court reasoned that although the warranty deed given by Boswell Land to Elton did not except the Zions trust deed, the court could look at parole evidence to ascertain the real consideration given by Elton to Boswell Land for Parcel 1. The court then determined, based solely on the provisions of the UREC (specifically paragraphs 6 and 19), that "part of the consideration given by the plaintiff [Elton] was to take Parcel 1 and other property not involved in this action, subject to Zions' lien." *In re Boswell Land & Livestock, Inc.*, No. 185PC–0777, slip op. at 7 (Bankr. D.Utah Dec. 9, 1986).

At the hearing to clarify the bankruptcy court's ruling, the court agreed Elton did not have any responsibility for payment of the Zions trust deed, and Boswell Land was fully responsible for payment of the trust deed. The basis for the court's ruling is simply that the UREC disclosed the existence of the Zions trust deed, so Elton could have protected itself from paying Boswell Land the full purchase price without the Zions trust deed being paid. From the bench, the court stated,

> Elton had a contract that allowed Elton to protect itself because Boswell was required at all times to keep its debt on the property equal to or less than Elton's debt to Boswell. So when they reached that point, Elton could have refused to pay Boswell and instead paid off the [Zions] mortgage.

Tr. 14, 15.

On appeal, Elton asserts the bankruptcy court erred because the fact relevant to application of the doctrine of inverse order of alienation is not whether Elton knew about the Zions trust deed, but rather, whether it assumed any obligation to pay it or whether his assumption of the encumbrance was part of the consideration given for the purchase. Elton further asserts that under Utah Code Ann. § 57–1–27, it is entitled to direct the order of sale because the statute allows the trustor or his successor in interest to direct the order of sale of several parcels encumbered by a trust deed. The trustor is Boswell Land, and Elton is its successor in interest, and since Boswell Land doesn't care which parcel is sold first, Elton should be able to direct the order of the sale.

FHA counters that inclusion in the Earnest Money Receipt of the language, "subject to" and the UREC reference to an encumbrance are sufficient to avoid application of the doctrine of inverse order of alienation.

### III. *Applicability of Utah Code Ann. § 57–1–27*

■ At the conclusion of the hearing for clarification of the bankruptcy court's decision, the following colloquy ensued:

> The Court: With respect to the statutory argument of directing order of sale, if Parcel 1 is somehow clearly divisible, Elton could direct order of the sale. But it can't direct order of sale on property that it doesn't own....
>
> Ms. Barrett: (Counsel for FHA) Do I understand, then, your ruling is that the Utah statute is not applicable?
>
> The Court: That issue really isn't before me because I don't know what Parcel 1 is. It is not applicable as between Parcels 1 through 5 because Elton doesn't own all those parcels.

TR. 25.

Nothing Elton raises in its brief refutes the logic of the bankruptcy court's ruling, and this court agrees Elton has no statutory authorization to order the sale of the parcels it does not own, regardless of the effect decisions regarding their sale might have on the sale of his parcel. For that reason, the court affirms the bankruptcy court's decision that Utah Code Ann. § 57–1–27 is not applicable to these facts.

### IV. *Applicability of the doctrine of inverse order of alienation*

The bankruptcy court enjoys discretionary powers to order the sale of land parcels "on any terms or in any manner, subject only to statutory prohibitions and review for abuse of discretion." *Seasons, Inc. v. Atwell,* 86 N.M. 751, 527 P.2d 792, 798 (N.M.1974); *Speckner v. Riebold,* 86 N.M. 275, 523 P.2d 10 (1974). Therefore, the court must determine whether the bankruptcy court abused its discretion by concluding the doctrine of inverse order of alienation is not applicable to these facts.

■ The doctrine of inverse order of alienation is an equitable principle applied by the courts to adjust the rights of the various parties having an interest in mortgaged property. It has been stated as follows:

> Whenever the mortgagor has conveyed separate parcels of the mortgaged premises by warranty deeds to successive grantees, and there are no special provisions in any of their deeds, and no other dealings between themselves or with the mortgagor which disturb the equities otherwise existing, a priority results, depending upon the order of conveyance. As between the mortgagor and all the grantees, the parcel in his hands, if any, is primarily liable for the whole mortgage debt, and should be exhausted before having recourse to any of theirs; as between the grantees, their parcels are liable in the inverse order of their alienation, and any parcel chargeable first in order must be exhausted before recourse is had to the second.

*Seasons, Inc.,* 86 N.M. at 756–57, 527 P.2d at 797–98. Since the doctrine "is an equitable concept, the vital question is whether the duty of paying off the debt rests upon the mortgagor rather than the grantee." A. Nelson & D. Whitman, Real Estate Finance Law § 10.10 (2d ed. 1985).

> The inverse order of alienation does not apply when there is evidence of an intent that the doctrine should not be invoked. *Maurer v. Arab Petroleum Corp.,* 134 Tex. 256, 135 S.W.2d 87 (1940, opinion adopted). This intent is demonstrated when the subsequent mortgagee or grantee assumes the paramount debt or expressly takes his interest subject to it. 53 Am.Jur.2d, *Marshalling Assets* § 64. Under these circumstances it cannot be said that the mortgagor equitably had the primary responsibility of discharging the paramount mortgage debt. Therefore, any property retained by him and later encumbered or conveyed is not sold in the inverse order of alienation.

*Dan Hixson Chevrolet Co. v. Petree,* 20 B.R. 108, 112 (N.D.Tex.1982). An early Utah Supreme Court case, *New England*

*Loan & Trust Co. v. Stephens,* sets out the underlying rationale for the proposition that the mere inclusion in the deed of the language "subject to," without more showing of the intent of the parties, would be insufficient to charge the grantee with his pro rata share of the debt. 16 Utah 385, 52 P. 624, 625 (1898).

> In the absence of covenants in a deed having a different effect, a grantee who takes a conveyance of land subject to a mortgage is presumed to have paid the purchase price less the amount of the mortgage debt, and in such event it becomes his equitable duty to pay the debt or permit the same to be satisfied by the sale of the premises.... *Freeman v. Auld,* 44 N.Y. 50; *Johnson v. Thompson,* 129 Mass. 398; *Hancock v. Fleming,* 103 Ind. 533, 3 N.E. 254.

*New England Loan & Trust,* 52 P. at 625. Thus, the question of whether Elton received consideration for taking Parcel 1 "subject to" the Zions trust deed is highly relevant to the court's decision regarding the applicability of the doctrine of inverse order of alienation. Indeed, authority exists for the proposition that when the grantee takes subject to the blanket lien and pays the full price for the property, he assumes the role of surety on the lien, but does not assume the primary responsibility for its payment because imposition of primary responsibility on the grantee would work an inequity.

> The basis of the inverse order of alienation rule is that each of the successive purchasers has bought his parcel on terms which impose upon the mortgagor and the remaining property in his hands the primary obligation of paying the mortgage debt. The property in the hands of the grantee, although still liable, stands merely in the position of surety. *This situation occurs where the full price of the parcel is paid without deduction of the whole or any part of the debt secured by the blanket mortgage.*

Real Estate Finance Law, *supra* § 10.10 (emphasis added, footnotes omitted); *Gribble v. Staerman & Kaplan, Inc.,* 249 Md. 289, 239 A.2d 573 (1968); *In re Penn Central Transportation Co.,* 346 F.Supp. 1323, 1326 (E.D.Pa.1972); *see also,* Stork & Sears, *Transfer of Mortgaged Property,* 38 Cornell L.Rev. 185, 202 n. 69 (1953).

▮ This court is confused by the recitation of facts and the bankruptcy court's findings and conclusions on any reduction of purchase price Elton might have received as consideration for his taking subject to the Zions trust deed. In its December 9, 1986 memorandum opinion, the bankruptcy court stated,

> After examining the language of the contract, and in particular paragraphs 6 and 19, the Court is of the opinion that part of the consideration given by the plaintiff was to take Parcel 1 and other property not involved in this case subject to the Zion's lien. Consequently, the doctrine of the inverse order of alienation is inapplicable.

*Boswell Land,* slip op. at 7. The bankruptcy court's conclusion was reached after examining the UREC alone, and without taking further parol evidence regarding the intent of the parties, value of the land and other facts relevant to the determination of whether Elton received consideration.[2] Consequently, the conclusion was not based on a finding of fact, and must fail under the clearly erroneous standard. Moreover, FHA neither alleged Elton received consideration for taking the encumbered deed nor presented evidence to support that proposition. In light of Elton's disputation of the material fact that Elton received consideration and FHA's failure to substantiate it, summary judgment for FHA was inappropriate at that juncture.

However, the question of the propriety of the lower court's conclusion is not directly before this court, because it appears the bankruptcy court retreated in part from its

---

**2.** The need to examine the intent of the parties is underscored by the explicit language in the UREC that provides Elton would pay Boswell, and Boswell would pay Zions. The court further notes: 1) all other relevant documents place the responsibility for payment on Boswell; 2) Elton received a Warranty Deed free and clear of all encumbrances; and 3) Boswell had an express duty not to default.

position when it addressed the issue of consideration at the hearing on the motion to clarify.

> Mr. Mitchell: (Counsel for Elton) Certainly, if Elton is the buyer, if his agreement is that 'part of my purchase price of this property is to pay off this mortgage that exists,' then Elton looks real funny coming into court saying, 'Even though I agreed with Boswell that part of my purchase price was to pay off this prior mortgage, I haven't done so, but sell Boswell's property first.' That is a ridiculous position. That is not the position we are taking. On the other hand, if Boswell agreed to pay off the prior mortgage and if Elton's only responsibility was to pay $389,000, the reason the rule is present is because as between the two of them, it was Boswell's responsibility, and if he fails to comply with that responsibility, certainly his property ought to be sold first.
>
> The court looked solely at the provisions of the Uniform Real Estate Contract and said: 'I think under that contract as I interpret that contract, it was Elton's responsibility to pay Zions, that was part of his purchase price....
>
> The court: Where does the court say that was part of his purchase price?

Tr. 11, 12. Mr. Mitchell then referred to the bankruptcy court's memorandum opinion in which it wrote, "The doctrine is inapplicable where the parcel is conveyed subject to that encumbrance, or under a conveyance in which the grantee assumes its payment, and the amount, or the proportionate amount, of the paramount encumbrance is credited on or deducted from the consideration for the conveyance of the parcel." Tr. 13; *Boswell Land,* slip op. at 4. He continued,

> Mr. Mitchell: Certainly if Elton agreed that part of his consideration for buying that property was to pay off the Zions mortgage, I ought not to be here.
>
> On the other hand, if the agreement was, 'No, Elton, you pay Boswell $389,000 and Boswell pays Zions,' then

certainly Boswell's property ought to be sold first because it is Boswell that failed to comply with his agreement. I'm the first to admit that the Uniform Real Estate Contracts are not models of draftsmanship. They're standard forms, and they don't always fit the exact situation. They're not models of clarity.

> But it is our position, your Honor, that if you look at all the evidence in this case which we presented on this motion and that we will present at trial, that there isn't any doubt that the agreement between Elton and Boswell was 'Elton, you pay Boswell $389,000, you are not getting any deduction from that purchase price because of the Zions mortgage, you are going to pay Boswell, Boswell out of that pays Zions.'
>
> The court: I agree with you, I think I agree that you can read the language you are referring to on page 4 to mean what you are saying it meant. The court never thought that Elton assumed this obligation. The opinion isn't based on that.

Tr. 13, 14.

■ The issue of consideration was not briefed on appeal, but Elton represents that the parties agree Elton paid Boswell Land the full purchase price for Parcel 1, and Boswell Land failed to pay Zions. At oral argument, however, FHA alluded to Elton's failure to pay the full purchase price. Consequently, the court is left in a quandary regarding what consideration, if any, Elton received for taking subject to the Zions trust deed. It is therefore inclined to remand this action to the bankruptcy court with instructions to take evidence and enter findings on the consideration issue.

The court is aware of another principle that arises in this action: "The grantor's retained interest may be reached only if there is no injustice to the paramount encumbrancer such as undue delay or the necessity of litigation to reach the asset." *Dan Hixson,* 20 B.R. at 112; 53 Am.Jur.2d, *Marshalling Assets* § 64 (1970). The bank-

ruptcy court touched on this when it spoke from the bench during the hearing on the motion to clarify: "The question is, and I believe it is legal rather than equitable, whether Elton or the FHA is going to be an unsecured creditor of Boswell." Tr. 15. Elton argues that the result of the bankruptcy court's refusal to apply the doctrine of inverse order of alienation is not only inequitable but absurd because the sale of Parcels 2 through 5 will more than pay off the Zions trust deed. Elton does not dispute the validity of Zions' lien or the necessity of selling Parcel 1 if the lien could not be satisfied from the sale of the other parcels. The issue of the prejudice that will result to FHA should Elton prevail was not briefed on appeal, and only referred to in oral argument. Therefore, on remand, evidence taken on this question should be weighed accordingly against evidence supporting Elton's claim.

In response to the bankruptcy court's determination that Elton should have paid the Zions trust deed directly when it became aware of Boswell Land's failure to pay, Elton argues that FHA should have protected its interest in the trust deed when it received its own trust deed in 1979, by giving Elton notice to make all payments directly to FHA. Had FHA done this, the trust deed would have been paid long ago. Elton argues further that the bankruptcy court appears to place an affirmative duty on Elton to monitor Boswell Land's payments to Zions when there was no showing Elton should have been alerted to Boswell Land's failure to pay until Boswell Land filed bankruptcy nearly two years after Elton completed the purchase. Where neither the bankruptcy court nor FHA cites authority to support imposition of such an affirmative duty, and Elton cites none to refute it, this court finds no basis upon which to dispose of Elton's claim on that ground.

The case is affirmed in part and remanded in part with directions to the court below to proceed in accordance with this opinion.